IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROBERT I. HICKS,                          :
                                          :
        Plaintiff,                        :
                                          :
    v.                                    :
                                          :
PAUL G. CLARK, PATTY POWELL,              :   C.A. No.
KAREN VENEZKY, JOSEPH REDA,               :
GEORGE SMILEY, BILL BELL,                 :
and TIMOTHY SHELDON, all                  :   TRIAL BY JURY
individually and in their                 :   DEMANDED
official capacities as members            :
of the NEW CASTLE COUNTY COUNCIL,         :
and NEW CASTLE COUNTY, a                  :
Municipal Corporation,                    :
                                          :
        Defendants.                       :

### COMPLAINT

1.  This is a civil action for compensatory and punitive damages and for injunctive relief for retaliatory violations of rights to free speech, belief and association and the right to be free of race discrimination.  Plaintiff was a diligent and effective governmental auditor whose career was abruptly and illegally ended because he exposed illegality and corruption in high places.  He also was the victim of a spoils system and racial discrimination whereby he also lost his job because of his political party affiliation, and candidate support during the 2004 campaign season and also because of his race.  Seven Democrats acting in an administrative, executive, or managerial

capacity retaliated against him because of his protected activity in violation of legal precedent such as <u>Feldman v. Phila. Hous. Auth.</u>, 43 F.3d 823 (3d Cir. 1995).

## I.  <u>JURISDICTION</u>

2.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), 28 U.S.C. §§ 2201 and 2202, and the First and Fourteenth Amendments to the United States Constitution.  The cause of action arises under 42 U.S.C. § 1981 and § 1983.  The state law cause of action arises under 19 Del.C. § 1703.  This Court has jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367, which provides for supplemental jurisdiction.  The claims arose in this judicial district.

## II.  <u>THE PARTIES</u>

### A.  Plaintiff

3.  Plaintiff is a citizen of the United States and a resident of New Castle County, Delaware.  He is Black and a registered Republican by political party affiliation.  He also supported the reform position in the Democratic primary for County Executive in September 2004 and the election of Christopher Coons as County Executive in November 2004.

### B.  Clark

4.  Defendant Paul G. Clark, at all times relevant hereto, was the President of the New Castle County Council.  He is a registered Democrat by political party affiliation.  He is sued

individually and in his official capacity.

5.  Defendant Clark is an ally, supporter or friend of former County Executive Thomas P. Gordon ("Gordon") and his Chief Administrative Officer, Sherry L. Freebery ("Freebery"), who are presently awaiting an October 2005 criminal trial on federal racketeering charges.

6.  He was elected to office with their material assistance. He has been seen publicly meeting with Freebery over lunch.  He and his wife made financial campaign donations in support of the election of Freebery to the County Executive office.

7.  Clark also does not wish to employ a County Auditor who exposes waste, inefficiency, corruption, fraud and illegality in County Council or County government.

### C. Powell

8.  Defendant Patty Powell, at all times relevant hereto, was a member of the New Castle County Council.  She is a registered Democrat by political party affiliation.  She is sued individually and in her official capacity.

9.  Defendant Powell is an ally, supporter or friend of Gordon and Freebery who was elected to office in 2002 as a result of the criminal activity of Gordon and Freebery.  At that time, in Powell's September 7, 2002 primary and her November 5, 2002 general election campaigns, Gordon and Freebery caused County employees to illegally perform political and campaign activities during working hours, on behalf of her election, such as the

following:

      (a)  At least ten Executive Assistants of Gordon and Freebery were reassigned to devote more than 900 working hours to provide services to the Powell campaign and one other campaign.

      (b)  They caused County employees to use County computers, databases, photocopiers, paper and buildings to prepare campaign literature, create and maintain campaign contribution and voter databases, and perform other related campaign or political services.

      (c)  Then made at least one County employee take vacation days to work on the Powell campaign.

10.  Powell also does not wish to employ a County Auditor who exposes waste, inefficiency, corruption, fraud and illegality in County Council or County government.

### D.  Venezky

11.  Defendant Karen Venezky, at all times relevant hereto, was a member of New Castle County Council.  She is a registered Democrat by political party affiliation.  She is sued individually and in her official capacity.

12.  Defendant Venezky is an ally, supporter or friend of Gordon and Freebery.  For example, on or about January 16, 2002 they caused her to send a false letter to the County Ethics Commission stating that Freebery did not have to make a disclosure of a multi-million dollar loan on an annual Statement of Financial Interests because that was not the intent of County Council in enacting a financial disclosure ordinance.

13.  Venezky also was elected to office with the material support of Gordon and Freebery.

-4-

14.  Venezky also does not wish to employ a County Auditor who exposes waste, inefficiency, corruption, fraud and illegality in County Council or County government.

### E.  Reda

15.  Defendant Joseph Reda, at all times relevant hereto, was a member of the New Castle County Council.  He is a registered Democrat by political party affiliation.  He is sued individually and in his official capacity.

16.  Defendant Reda was appointed by Gordon to the County Council in November 2004 and he took the oath of office on December 7, 2004.  He is an ally, supporter or friend of Gordon and Freebery.

17.  Reda also does not wish to employ a County Auditor who exposes waste, inefficiency, corruption, fraud and illegality in County Council or County government.

### F.  Smiley

18.  Defendant George Smiley, at all times relevant hereto, was a member of New Castle County Council.  He is a registered Democrat by political party affiliation.  He is sued individually and in his official capacity.

19.  Defendant Smiley does not wish to employ a County Auditor who exposes waste, inefficiency, corruption, fraud and illegality in County Council or County government.

### G.  Sheldon

20.  Defendant Timothy Sheldon, at all times relevant

hereto, was a member of New Castle County Council. He is a registered Democrat by political party affiliation. He is sued individually and in his official capacity.

21. Defendant Sheldon does not wish to employ a County Auditor who exposes waste, inefficiency, corruption, fraud and illegality in County Council or County government.

### H. Bell

22. Defendant Bill Bell, at all times relevant hereto, was a member of New Castle County Council. He is a registered Democrat by political party affiliation. He is sued individually and in his official capacity.

23. Defendant Bell does not wish to employ a County Auditor who exposes waste, inefficiency, corruption, fraud and illegality in County Council or County government.

### I. The County

24. Defendant New Castle County is a municipal corporation organized under the laws of the State of Delaware.

### III. <u>FACTS GIVING RISE TO THE ACTION</u>

### A. Plaintiff

25. Plaintiff is 48 years old. He holds a B.B.A. (Bachelor of Business Administration) degree with a concentration in accounting from Temple University's Fox School of Business and Management.

26. His employment record includes four years of general accounting at a manufacturing company (Stein Seal Company); two

years of financial auditing plus two years management consulting and systems development for the Philadelphia office of Arthur Andersen & Co.; two years of financial, operational, and information technology auditing at Alco Standard Corporation (currently known as IKON Office Solutions); three and a half years of financial, operational, and information technology auditing for Campbell Soup Company; and eleven years in various project management and business analyst roles at MBNA America.

27.  He is a member of the following professional organizations: Pennsylvania Institute of Certified Public Accountants (PICPA), National Association of Local Government Auditors (NALGA), and the Association of Government Accountability (AGA).

28.  He has achieved the following distinctions: Certified Public Accountant (CPA) from the Commonwealth of Pennsylvania; certified Project Management Professional (PMP) from the Project Management Institute; Beta Alpha Psi (National Accounting Honor Fraternity), holding the offices of President and Director of Committees at Temple University.

29.  Plaintiff was hired by County Council acting in an administrative, executive or managerial capacity as the County Auditor and began employment on November 6, 2002.  He was responsible for investigating, identifying and exposing waste, inefficiency, fraud and illegality within County government.  At all times his job performance was outstanding.

30.   During his term of employment plaintiff increased the amount of time dedicated weekly to audit related tasks and activities from the one to two days per week of his predecessor to greater than three days per week.

### B.   The Statutory Position of County Auditor

31.   9 Del.C. §§ 1401-1409 create the position of County Auditor and describe its duties and responsibilities.

32.   The County Auditor is appointed by the County Council, at a salary it sets, and serves at its pleasure.   § 1401(a)and (c).

33.   "The County Auditor shall annually have examined the accounts, books and records of *all offices, departments and boards* that reflect transactions involving financial activities and affairs of the County. Such audits ... shall ... express opinions concerning whether such transactions have been carried out in accordance with the appropriation ordinances, rules and regulations of the County Council and laws governing such transactions."   § 1404 (emphasis added).

34.   "If the County Auditor shall at any time discover any unauthorized, illegal, irregular or unsound practice, he or she shall forthwith lay such facts before the County Executive and the County Council."   § 1405(b).   He also shall make recommendations deemed appropriate in the management of the financial affairs of the County.   § 1405(c).

35.   The County Auditor by State law is responsible for

auditing any office, board, commission, department, committee or other entity of County government, including the County Council, the legislative branch of County government.

### C. Protected Activity

36. During his employment, plaintiff spoke out and exposed waste, inefficiency, corruption, fraud and illegality in County Council and County government.  He spoke out on issues of public concern under the First Amendment.  He sought to bring to light actual or potential wrongdoing or breach of the public trust by County Council and others and to have those wrongs corrected.

37. By its content, form and context, at all times plaintiff spoke out about matters of public concern.

38. All of plaintiff's speech was non-disruptive of any interest of his employer and it was on matters of concern to his employer, the General Assembly, the Governor of Delaware, the news media and the public at large.  His speech related to matters of political, social and other concern to the community, such as fiscal and financial matters.

39. The individual defendants were aware of plaintiff's protected speech which occurred throughout the course of his entire employment, since it was widely publicized.

40. This speech antagonized each of them.

### i.  Content

41. The content of plaintiff's protected speech includes the following.

(a) On the recommendation of Ernst and Young, in December 2004 plaintiff recommended to the newly elected members of County Council a risk assessment of the County Finance Department which had the possibility of uncovering misuse of public monies, fraud and other impropriety by the outgoing indicted administration of Gordon and Freebery.  But on January 11, 2005 County Council voted 8-4, acting through its Finance Committee, against conducting this risk assessment which could lead to the discovery of crimes and financial irregularity.

(b)  On August 23, 2004 he submitted to the "citizens of New Castle County," the County Attorney, Freebery and the Clerk of Council, a Residency Audit Report which disclosed that the then incumbent County Attorney failed to comply with the County residence ordinance. Plaintiff's actions ultimately led to the County Attorney's resignation on October 8, 2004.

(c)  On July 20, 2004 he reported to the Office of the Attorney General of the State of Delaware a series of illegal County Council meetings among four members of Council which failed to comply with the Delaware Freedom of Information Act and which concerned the expenditure of $15 million of taxpayer money.  At this time he also answered questions from The News Journal and WILM radio on the issue.  The Department of Justice in a subsequent written opinion declared these meetings illegal.

(d)  On April 19, 2004 he issued an audit report which reported a previously unknown suspicious contract with AIS Risk Management Services as a middleman for delivering $ 1.5 million of County business to the law firm of Freebery's brother, an obvious conflict of interest.

(e) Then on August 16, 2004 he reported to Council, the County Executive and others that the Executive Branch, without Council's knowledge, had modified the County's contract with AIS Risk Management Services so that the contract benefitting Freebery's brother automatically renewed without Council approval.

(f)  On April 19, 2004 he exposed the misdeeds of County employee Lynn Moroz, and the Gordon and Freebery administration's questionable business practices of retaining Lynn Moroz as a contractor providing risk

management services to New Castle County.  This led to his subsequent federal indictment and guilty plea for non-payment of federal income taxes.

(g)  On April 6, 2004, he promptly informed County Council of an attempt by Gordon, then County Attorney Timothy Mullaney, and defendant Venezky to interfere with the conduct of the first internal audit department compliance audit which was an attempt to hide from Council and the taxpayers the triangular business relationship among Lynn Moroz, the Gordon-Freebery administration, and the law firm of Freebery's brother. This relationship served to funnel $1.5 million to the law firm of Freebery's brother.

(h)  He spoke candidly with the public concerning audit and financial matters.  For example, on January 21, 2004, on the invitation of the Chair and Vice-Chair of the Delaware Housing & Community Affairs Committee of the Delaware General Assembly, he testified before that Committee and rendered his professional opinion on proposed legislation that would significantly improve state law concerning the Office of the County Auditor. Before agreeing to testify plaintiff determined that the members of County Council had no objection to his testifying.  But afterwards defendants Venezky and Powell publically chastised him for his testimony, even though they failed to offer any objection when plaintiff solicited such comments.

(i) During the May 2004 New Castle County budget hearings, he recommended the use of long-time vacant positions rather than creating new jobs.  The Gordon-Freebery administration resisted this prudent cost-saving strategy and Venezky and Powell led the effort to defeat the recommendation.

### ii.  Context

42.  The context of plaintiff's speech included a several

year period of high scrutiny of the operation of County

government, Gordon, Freebery and others by the FBI, IRS and the

United States Attorney's office which resulted in a far ranging

multi count criminal indictment of three high County officials

for racketeering and other crimes, including financial crimes involving misuse of taxpayer money.  The media, state government and general public closely scrutinized all operations of County government during this period.

### iii.  Form

43.  The form of plaintiff's speech included written reports and speech to the County Council, other government officials, the media and the public.

### D.  The Illegal Firing of Plaintiff

44.  On January 25, 2005 County Council held a regular legislative meeting that also included an executive session.

45.  Immediately thereafter Council convened a meeting for the non-legislative purpose of ending the employment contract of just one specific individual.

46.  The agenda for the meeting was posted just one day before on January 24th, and not the more normal seven days in advance.

47.  The subject matter of the non-legislative meeting was "discussion of confidential personnel matter."

48.  Plaintiff then waived confidentiality.

49.  John Flaherty, the president of Common Cause of Delaware, was seated in the audience.  He publicly protested the meeting and argued that it had not been properly posted and noticed under state law.

50.  Clark threatened to eject Flaherty from the chamber if

he persisted in questioning the legality of the meeting.

51.  Clark denied the public any opportunity to comment during the meeting.

52.  Then, on a motion by defendant Clark, which was seconded by defendant Venezky, on Tuesday evening January 25, 2005 plaintiff was unceremoniously fired by County Council by a vote of the seven defendants, which was opposed by five other Council members, with another abstention.  Defendant Sheldon called for the vote.

53.  The action which was taken:

> (a) was administrative, executive, managerial or proprietary,

> (b) was not an integral step in the legislative process,

> (c) was not part of the legislative process itself,

> (d) did not involve policy making of a general scope,

> (e) was not substantively legislative,

> (f) was not procedurally legislative, and/or

> (g) was only casually or incidentally related to legislative affairs.

54.  Little public explanation was given by the defendants at that time for their action.

### i.  Clark's Statements

55.  But defendant Clark did state that evening that plaintiff was a lightening rod for controversy.  This is a euphemism for the fact that plaintiff had a history of speaking

out on matters of public concern, and exposing fraud, corruption and illegality in County government.

56.  Clark also had stated publicly at two candidate forums in 2004 that plaintiff had "been too aggressive" in the execution of his auditor duties.

57.  Clark also publicly stated that evening that "they know things the public doesn't know" about plaintiff.  This conveyed a clear message that plaintiff had been a bad auditor and he was guilty of misconduct.

58.  Clark also inconsistently stated that he had only just decided in January that plaintiff should be terminated.  But on a later occasion on radio station WDEL Clark stated that he had decided to fire plaintiff the week of the November general election.

### ii.  Other Statements

59.  One Council member who opposed the termination, Jea Street, publicly stated that Clark was initiating the firing of plaintiff because plaintiff had opposed Clark in the Democratic primary election the prior September.

60.  Street also quoted Clark as stating "I'm the new president, I've got seven votes; I'm going to take him out."

61.  Another Council member who opposed the termination, Penrose Hollins, stated that the firing was irrational since plaintiff had just received a positive job review by the international public accounting firm Ernst and Young during the

-14-

last audit season.  His job performance had been outstanding.

62.  County Executive Christopher Coons stated at that time
that plaintiff was an effective auditor who should be commended,
not fired.

### E.  Clark's Attempt to Bar the Auditor
from Reporting Wrongdoing

63.  Thereafter on March 8, 2005 Clark proposed Council
Resolution 05-046 which urged the General Assembly to amend State
law to prohibit the County Auditor from contacting the Department
of Justice after he has duly contacted the Executive and
Legislative branches of County government about wrongdoing.

64.  The effect and intent of this proposed legislation was
to preclude the auditor from directly communicating with the
State Department of Justice whenever both the Executive branch of
government and a majority of Council had both engaged in wrongful
conduct.  Such acts would violate the auditor's job description
and constitute grounds for termination.

### F.  The Democratic Party Replacement for Plaintiff

65.  On April 4, 2005 Council then hired, as the replacement
for plaintiff, Robert B. Wasserbach.  The vote was 10 Yes, 1
Present, 2 Council members absent, with each individual defendant
voting to hire Wasserbach, except Powell who was absent for the
vote.

66.  The specific condition was set for Wasserbach's
employment that he would perform no audits of County Council and

he would ignore the conduct of the legislative branch of County government.

67.   In this regard, defendant Clark publicly stated that Wasserbach would monitor the executive branch of government, not the Council itself.

68.   In this regard, County Council has its own budget which exceeds $2.7 million.

69.   However, Clark's directive is illegal because State law provides that the Auditor must examine "the accounts, books and records of all offices, departments and boards that reflect transactions involving financial activities and affairs of the county," which includes County Council.

### G.   Evidence of Causation

70.   There is a causal link between First Amendment protected activity on matters of public concern and the adverse action of terminating the employment of plaintiff.  This is demonstrated by the following:

(a)   Each defendant was personally aware of plaintiff's protected activity.

(b)   Each defendant had a motive to retaliate against plaintiff.  For example, (1) defendants Clark, Powell, Venezky and Reda are friends, allies and cronies of Gordon and Freebery and they are paying plaintiff back for speech which exposed misdeeds of Gordon and Freebery.  (2) Defendants Smiley, Sheldon and Bell did not want a County Auditor who will investigate County Council of which they were members.  So they replaced plaintiff and removed oversight of Council from his successor's job description.

(c)   The temporal proximity is unduly suggestive.  (1)

Plaintiff was fired within days of the Council voting
8-4 to reject his risk assessment of the County Finance
Department's stewardship and possible crimes during the
prior administration. (2) Defendants also did not
assume their Council duties and through their seven
votes control Council until November 9, 2004.  Then
within eleven weeks they fired plaintiff.

(d)  There is circumstantial evidence of a pattern of
antagonism towards plaintiff. For example, (1) in the
spring of 2003 Venezky defeated by a 4-3 vote a
recommendation that the County change its outside audit
firm.  She then turned around and smirked at plaintiff
who had recommended the change.  Later that vote was
reversed after plaintiff reported unfavorable facts
about the Council approved audit firm.  Venezky then
refused to speak to plaintiff for two weeks after she
lost that second vote. (2) On numerous occasions from
then through November 2004 various persons indicated to
plaintiff that Venezky and Powell wanted him to be
fired.  (3) On April 2, 2004 Venezky falsely accused
plaintiff of being unprofessional and performing
substandard work and tried to intimidate him.

(e)  Lies and manufactured false reasons have been
offered for the vote to terminate plaintiff.  For
example, Clark falsely publicly stated that plaintiff
had been a bad auditor and he was guilty of misconduct.
Clark also has given conflicting statements on material
issues, such as his statement on WDEL radio that he
decided in November 2004 to fire plaintiff and his
January 25th statement that he had just decided to fire
plaintiff at that time.

(f)  There is the following direct evidence that
protected speech played a role in the termination. (1)
During his election campaign Clark twice stated at
candidate forums that plaintiff "was being too
aggressive" in the execution of his duties.  (2) Clark
also stated the night plaintiff was fired that
plaintiff was a lightening rod for controversy, a
euphemism for his protected speech.  (3) Then Clark
proposed Resolution 05-046 which would bar the auditor
from reporting wrongdoing to the Department of Justice.
(4) Additionally, plaintiff's replacement has been
forbidden to audit County Council which demonstrates
that prior audits of Council played a role in the
decision. (5) Council member Jea Street also quoted
Clark as stating "I'm the new president, I've got seven

votes; I'm going to take him out."  (6) The seven
defendants also voted on January 20, 2005 to prevent
plaintiff from conducting a risk assessment of the
County Finance Department which could have discovered
financial mismanagement and illegalities during the
prior administration.

(g)  The firing was irrational.  (1) Plaintiff's job
performance was outstanding and he had just received a
positive job evaluation during the last audit season
from Ernst and Young.  (2) Plaintiff's replacement was
also less qualified for the position than plaintiff by
all objective measures.  (3) Additionally, there was
not even an up to date written job description for
plaintiff until January 20, 2005, five days before the
firing.

(h)  State law was violated.  The new County Auditor
has been forbidden to audit the $2.7 million dollar
County Council budget.

(i)  The refusal to give a public reason for the
defendants' vote leads to the logical conclusion that
the reason is illicit.

(j)  On March 21, 2005 the Delaware Department of
Labor, Division of Unemployment Insurance, rendered a
decision (Appeal docket Number 235639) that "The
claimant (Robert Hicks) was discharged by his employer
without just cause in connection with the work."

(k)  the evidence as a whole.

71.  First Amendment protected activity was a substantial or

motivating factor in the termination of plaintiff.  For example:

(a)  if the votes of the four defendants, who are
cronies of Gordon and Freebery and who are paying
plaintiff back for exposing Gordon and Freebery's
misdeeds, are removed from the 7-5-1 vote totals, the
vote is 5-3-5 to retain plaintiff.

(b)  The opinions of these four defendants also
influenced the vote of the remaining three defendants
and played a role in the final vote of all seven to
terminate.

(c)  The desire of those remaining three defendants to

stop audits of County Council operations also
influenced the vote of the four cronies of Gordon and
Freebery.

72.  The natural probative force of the evidence
demonstrates causation.

73.  The totality of retaliatory adverse action taken by
defendants against plaintiff is sufficient to deter any person of
ordinary firmness from exercising their First Amendment rights to
free speech, political association and belief.

74.  Any reasonable person of ordinary firmness would be
deterred from exercising their First Amendment rights to free
speech, political association and belief when threatened with the
loss of his job.

75.  The defendants cannot prove by a preponderance of the
evidence that absent a constitutional violation they would have
grounds to terminate plaintiff.  For example, had the four
cronies not influenced Smiley, Bell and Sheldon, those three
members would have voted with the five Council members who voted
to retain plaintiff.  Those eight votes on a 13 person Council
then would have defeated Clark's motion to terminate.

### H.  Damages

76.  As a direct and proximate result of the actions of the
defendants as detailed herein, plaintiff will suffer lost wages,
earnings and benefits, he will suffer diminished earning capacity
now and upon his retirement, decreased employment and earnings
opportunities, and other pecuniary losses, emotional pain,

-19-

suffering, disappointment, anger, inconvenience, mental anguish, loss of enjoyment of life, mental and physical pain, anguish, humiliation, embarrassment, injury to reputation, and other non-pecuniary losses and injury.

77.   The firing of plaintiff was reported by radio stations WDEL and WILM, the News Journal and the Community News papers, and on various world wide web sites.  The message conveyed was that plaintiff was a bad auditor and that he was guilty of some undisclosed wrongdoing.

78.   Clark's public statements also conveyed the message that plaintiff performed his job in a divisive manner and his statements were a negative attack on plaintiff.  Clark falsely accused plaintiff of "not fulfilling his state mandated task of acting as an advisor to the Council on financial matters" which again was a reflection on his job performance.  Similarly, Clark's public statements that the Council knows "things the public doesn't know" about plaintiff also conveys a false message of misconduct about plaintiff's job performance.

79.   Plaintiff is also manifesting classic symptoms of anxiety, stress and even depression, such as weight loss and inability to sleep.

80.   Plaintiff was paid approximately $86,900 per year for a 35 hour week.  His place of employment was near his home and his minor daughter's high school.

81.   He unsuccessfully tried to mitigate his damages by

-20-

securing new employment in New Castle County.

82.  Because of the damage to his professional reputation locally, to support his family plaintiff has taken lesser employment out of state which requires him to work a 40 hour week and to travel several hours per day to and from work.  His earnings from his principal employment have decreased.

83.  Plaintiff has lost the ability to work secondary employment to supplement his income, as he had done previously, because of his long commute which costs him about ten hours per week in lost time.

### IV.  ALLEGATIONS REGARDING THE DEFENDANTS' CONDUCT

84.  At all times material hereto the individual defendants participated in, authorized, and sanctioned the federal constitutional deprivations described above which illegally retaliated against plaintiff.

85.  At all times material hereto the individual defendants and their agents were acting under color of law.  The federal constitutional deprivations described herein are fairly attributable to the state.

86.  The actions of the defendants and their agents or employees were deliberately, intentionally, willfully, purposefully, and knowingly done in violation of federal constitutional and state rights and because of the exercise of those rights.

87.  The defendants either knew or showed a negligent or

-21-

reckless disregard for the matter of whether their conduct violated federal constitutional rights.

88.   Their actions were outrageous and taken with evil motive, in bad faith, out of personal animus and without any reasonable grounds to support them.

89.   Their actions were wanton and malicious or taken with reckless indifference to federal constitutional rights.

90.   The exercise of rights under the U.S. Constitution and state law made a difference in all actions adverse to plaintiff.

91.   The exercise of these rights was a substantial, motivating or determinative factor in all actions adverse to plaintiff.

92.   The defendants did not reasonably believe that the actions they took were necessary to accomplish any legitimate governmental purpose.

93.   The individual defendant's actions violated clearly established federal constitutional rights of which any official would have known.

94.   The individual defendants' actions were only administrative, executive, managerial or proprietary, and they were not legislative.

95.   The defendants' actions were motivated by bias, bad faith, and improper motive.

96.   The defendants' actions constitute an abuse of governmental power.

97.   The defendants' actions do not further any narrowly drawn important, substantial or compelling governmental interest.

98.   The defendants' actions are not so reasonable as to further any governmental interest asserted and do not closely fit the goal of serving those governmental interests.

99.   The actions of the defendants were taken pursuant to county policies, customs and/or practices and were authorized, sanctioned, implemented, permitted, and ratified by officials functioning at a policy making level.

100.  By the policy, custom, and/or practice of officials functioning at a policy making level, the defendants have retaliated against plaintiff.

101.  That policy, custom and/or practice caused a deprivation of constitutional rights.

102.  Additionally, the defendants must have known, or reasonably should have realized, from the nature of their conduct that their policy, custom and/or practice was causing or was likely to cause violations of constitutional and state law rights.

### COUNT I (FIRST AMENDMENT - FREE SPEECH RETALIATION)

103.  Plaintiff repeats and realleges paragraphs 1-102 set out above.

104.  The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for plaintiff's First Amendment protected speech on matters of public concern.

There is a temporal and causal relationship between plaintiff's aforementioned protected speech and conduct, and adverse employment action.  First Amendment protected activity was a substantial or motivating factor in the adverse employment action.  The defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have grounds to terminate plaintiff.

105.  Plaintiff's constitutional right to freedom of speech has been denied under the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

### COUNT II (FIRST AMENDMENT - POLITICAL ASSOCIATION OR BELIEF RETALIATION)

106.  Plaintiff repeats and realleges paragraphs 1-105 set out above.

107.  Plaintiff was employed directly by County Council.

108.  By a vote of 7-5-1 his employment was terminated.

109.  Plaintiff is a well known registered Republican.

110.  In his private life and off duty, plaintiff voted for and openly supported Republican candidates for County offices in the general election in November 2004.  For example, his lawn displayed campaign signs supporting Republican Ernie Lopez in his general election campaign against defendant Clark.  He distributed campaign literature for Lopez.  Defendants were aware of this.

111.  He voted for and openly supported Lopez who was the

Republican opponent of defendant Clark for president of County Council in the general election.

112.  In the Democratic primary election defendant Clark also was opposed by a Democratic challenger, Council member Penrose Hollins.  Clark only defeated Hollins by 152 votes.  In his private life and off duty, plaintiff openly supported Hollins over Clark.  Defendants were aware of this.

113.  In his private life plaintiff also supported the reform candidate, Christopher Coons, in the Democratic Party primary in September 2004 instead of Freebery.  Plaintiff posted a yard sign supporting Coons.  Defendants were aware of this.

114.  State law provides in 9 Del.C. § 1183(a)(1) that plaintiff's employment cannot be terminated because of his political affiliation.

115.  Plaintiff's replacement also is a Democratic Party partisan and former unsuccessful state-wide candidate for elected office.

116.  The position of County Auditor does not require a political affiliation or belief.  Defendants are unable to prove that political affiliation or belief are appropriate requirements for the position of County Auditor.

117.  The individual defendants also were aware of plaintiff's Republican Party political affiliation, Republican Party candidates he supported in his private life during the general election in November of 2004, and the fact that in his

private life he also supported the reform candidates, Christopher Coons and Penrose Hollins, in the Democratic Party primary in September 2004.

118.  Plaintiff's Republican Party political affiliation and other speech, activities and associations during the 2004 election season in his private life antagonized each defendant.

### A.  Evidence of Causation

119.  There is a causal link between First Amendment protected activity regarding plaintiff's political belief and association and the adverse action of terminating his employment. This is demonstrated by the following:

> (a)  Each defendant was personally aware of plaintiff's Party registration and protected activity.
>
> (b)  Each defendant had a motive to retaliate against plaintiff.  They are Democratic Party activists and members distributing the spoils of their election victory whereby they have seven votes which is the majority of a 13 member Council.  Clark's election was also opposed by plaintiff who supported his Republican Party opponent in the general election and his Democratic Party opponent in the Democratic primary.
>
> (c)  The temporal proximity is unduly suggestive. Defendants did not assume their Council duties and through seven votes control Council until November 11, 2004.  Then within eleven weeks they fired plaintiff.
>
> (d)  There is circumstantial evidence of a pattern of antagonism towards plaintiff. For example, (1) On numerous occasions from 2003 through November 2004 various persons indicated to plaintiff that Venezky and Powell wanted him to be fired.  (2) Then on April 2, 2004 Venezky falsely accused plaintiff of being unprofessional and performing substandard work and tried to intimidate him.
>
> (e)  Lies and manufactured false reasons have been

-26-

offered for the vote to terminate plaintiff.  (1) Clark
falsely publicly stated that plaintiff was a bad
auditor and he was guilty of misconduct.  (2) Clark has
given conflicting statements on material issues, such
as his statement on WDEL radio that he decided in
November 2004 for fire plaintiff and his January 25th
statement that he had just decided to fire plaintiff.

(f)  One Council member who opposed the termination,
Jea Street, publicly stated that Clark was initiating
the firing of plaintiff because plaintiff had opposed
Clark in the Democratic primary election.

(g)  The firing was irrational since plaintiff's job
performance was outstanding and he had just received a
positive job evaluation during the last audit season
from Ernst and Young.  Plaintiff's replacement was also
less qualified for the position than plaintiff by all
objective measures.

(h)  State law has been violated since 9 Del.C. §
1183(a)(1) states that plaintiff's employment cannot be
terminated because of his political affiliation.

(i)  The refusal to give a public reason for the
defendants' vote leads to the logical conclusion that
the reason is illicit.

(j)  Council member Jea Street also quoted Clark as
stating "I'm the new president, I've got seven votes;
I'm going to take him out."

(k)  On March 21, 2005 the Delaware Department of
Labor, Division of Unemployment Insurance, rendered a
decision (Appeal docket Number 235639) that "The
claimant (Robert Hicks) was discharged by his employer
without just cause in connection with the work."

(l)  the evidence as a whole.

120.  First Amendment protected political belief and
association were a substantial or motivating factor in the
decision to terminate the employment of plaintiff.  The natural
probative force of the evidence demonstrates causation.

121. The defendants cannot prove by a preponderance of the

-27-

evidence that absent a constitutional violation they would have grounds to terminate plaintiff.

122.   The totality of retaliatory adverse action taken by defendants against plaintiff is sufficient to deter any person of ordinary firmness from exercising their First Amendment rights to political belief and association.

123.   Any reasonable person of ordinary firmness would be deterred from exercising their First Amendment rights to political belief and association when threatened with the loss of his job.

124.   The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for plaintiff's First Amendment protected political belief and association. There is a temporal and causal relationship between plaintiff's aforementioned protected belief and association and adverse employment action.  First Amendment protected activity was a substantial or motivating factor in the adverse employment action.  The defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have grounds to terminate plaintiff.

125.   Plaintiff's constitutional rights to freedom of political belief and association have been denied under the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

**COUNT III (FOURTEENTH AMENDMENT EQUAL PROTECTION – FUNDAMENTAL RIGHT – FIRST AMENDMENT – STRICT SCRUTINY)**

126.   Plaintiff repeats and realleges paragraphs 1-125 set out above.

127.   The First Amendment rights of freedom of speech, belief and association are fundamental rights guaranteed to plaintiff under the Fourteenth Amendment to the U.S. Constitution.

128.   Freedom of political speech, belief and association are also guaranteed by state law in 9 Del.C. § 1183(a)(1).

129.   Plaintiff engaged in political speech, belief and association supporting Republican Party and Reform Democratic Party ideas and candidates.  Plaintiff also engaged in speech critical of fraud, corruption and other illegality in county government.

130.   In derogation of fundamental constitutional rights, the individual defendants created a classification which only allows employment as County Auditor to those persons who support approved Democratic Party candidates, or Democratic Party sponsored or approved political speech, belief and association or speech that is not critical of fraud, corruption and other illegality in county government.

131.   This classification and discrimination is not justified by any compelling state interest which is narrowly drawn.  It cannot survive strict scrutiny analysis.

132.   Plaintiff's constitutional right to the equal protection of the law has been denied under the Fourteenth

Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

### COUNT IV (FOURTEENTH AMENDMENT EQUAL PROTECTION - FUNDAMENTAL RIGHT - FIRST AMENDMENT - RATIONAL BASIS)

133.  Plaintiff repeats and realleges paragraphs 1-132 set out above.

134.  The classification and discrimination which the defendants created cannot survive rational basis analysis.

135.  Illegal conduct under state law can never be a rational basis for any legitimate governmental action. Defendants' conduct is illegal under 9 Del.C. §1183(a)(1).

136.  There is no legitimate basis in fact for the treatment of plaintiff nor is there any rational relationship to any legitimate governmental objective.

137.  Plaintiff's constitutional right to the equal protection of the law has been denied under the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

### COUNT V (FOURTEENTH AMENDMENT & 42 U.S.C. § 1981 - RACE DISCRIMINATION)

138.  Plaintiff repeats and realleges paragraphs 1-137 set out above.

139.  Plaintiff is Black.

140.  He was qualified for and performing his job in an exemplary manner.

141.  Plaintiff was fired.

142.  His replacement is White.

143.  The seven members of County Council who voted against

plaintiff are white.

144.  Any legitimate non-discriminatory reason offered by the defendants for their treatment of plaintiff is a pretext for intentional discrimination based upon his race.

145.  Plaintiff can demonstrate pretext because any legitimate non-discriminatory reason offered as a justification is unworthy of credence since plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in any proffered legitimate reason that a reasonable fact finder could rationally find it unworthy of credence and hence infer that the defendant did not act for the asserted non-discriminatory reason.

146.  Alternatively, plaintiff can demonstrate pretext because the natural probative force of all the direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was plaintiff's race.

147.  For example, County Councilman Jea Street, who serves on Council and works with the individual defendants on a daily basis, has publically stated that racial overtones colored defendants' decision to fire plaintiff.  Other elected officials, including State Representative Hazel Plant, have publically stated the same.

148.  Freedom from race discrimination also is guaranteed by State law in 9 Del.C. § 1183(a)(1).

149.  In derogation of the fundamental constitutional right to be free of race discrimination, the individual defendants created a classification which only allows employment as County Auditor by a White.

150.  This classification and discrimination is not justified by any compelling state interest which is narrowly drawn.  It cannot survive strict scrutiny analysis.

151.  Plaintiff's constitutional right to the equal protection of the law has been denied under the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983 and § 1981.

**COUNT VI (DELAWARE WHISTLEBLOWERS' PROTECTION ACT)**

152.  Plaintiff repeats and realleges paragraphs 1-151 set out above.

153.  Plaintiff spoke out and reported numerous actions by the County Executive, County Council and County employees which were materially inconsistent with and a serious deviation from financial management and accounting standards set forth under both state and county law.

154.  These actions by the County violated laws intended to protect the public from fraud, deceit and misappropriation of public funds and assets under the County's control.

155.  Plaintiff reported the County's actions to, among others, County Council, the County Executive, the Attorney General's Office and the General Assembly.

156.  His reports were in the form of both oral and written communications.

157.  Plaintiff's speech included, among other things: his reports of County Council's illegal actions concerning the expenditure of $15 million dollars of taxpayer monies; his reports of the numerous issues surrounding the AIS Risk Management Services contract; his refusal to be complicit in and turn a blind eye to the ongoing financial improprieties and other fraud occurring in County government; and his testimony before the Delaware Housing & Community Affairs Committee of the Delaware General Assembly.

158.  In speaking out and reporting these actions, plaintiff sought to protect the public from fraud, deceit and misappropriation of taxpayer money by the County.

159.  The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for plaintiff's written and oral communications.  There is a temporal and causal relationship between plaintiff's aforementioned protected whistleblower speech and conduct, and adverse employment action. Whistleblower protected activity was the primary basis for the adverse employment action.

160.  Plaintiff's right to be free of retaliation for protected whistleblower activity has been denied under 19 Del.C. § 1703.

**Wherefore**, plaintiff prays that the Court:

-33-

A.    Enter judgment against the defendants.

B.    Enter a declaratory judgment declaring the acts of the defendants to be a violation of plaintiff's constitutional and statutory rights.

C.    Enter a judgment against defendants, jointly and severally, for compensatory damages, including lost wages, back pay, benefits, future or front pay, loss of earning capacity, emotional distress, humiliation, and injury to reputation.

D.    Enter a judgment against all the individual defendants, jointly and severally, for punitive damages.

E.    Award plaintiff costs, interest and attorneys' fees for this suit, and pre and post judgment interest.

F.    Issue a mandatory injunction directing the defendants to reinstate plaintiff to his former position.

G.    Award front pay until plaintiff can be reinstated to that position.

H.    Issue a mandatory injunction directing that a formal letter of apology signed by each defendant be placed in plaintiff's personnel file, apologizing for their violation of his First Amendment, Fourteenth Amendment and statutory rights, and that they publish that letter in the local media.

I.    Require such other and further relief as the Court deems just and proper under the circumstances.


**THE NEUBERGER FIRM, P.A.**


    /s/ Thomas S. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582

-34-

TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Attorneys for Plaintiff

Dated: June 29, 2005

Hicks\PLEADING\COMPLAINT.final