IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT I. HICKS, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | C.A. No. 05-445 (GMS) |
| PAUL G. CLARK, PATTY POWELL, | ) | |
| KAREN VENEZKY, JOSEPH REDA, | ) | |
| GEORGE SMILEY, BILL BELL, and | ) | |
| TIMOTHY SHELDON, all individually and in | ) | TRIAL BY JURY DEMANDED |
| their official capacities as members of the NEW | ) | |
| CASTLE COUNTY COUNCIL, and NEW | ) | |
| CASTLE COUNTY, a Municipal Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO STAY

Sheldon N. Sandler, Esquire (No. 245)
Margaret M. DiBianca, Esquire (No. 4539)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6673, 5008
Facsimile: (302) 576-3330; 3476
ssandler@ycst.com, mdibianca@ycst.com
Attorneys for Defendants

Dated: September 6, 2005

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... i

NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF FACTS .................. 1

SUMMARY OF ARGUMENT .................................................................................................... 3

ARGUMENT .............................................................................................................................. 4

I.     THE PRESENT MATTER SHOULD BE STAYED PENDING THE RESOLUTION
OF THE <u>GARCETTI</u> CASE, IN WHICH THE SUPREME COURT HAS GRANTED
CERTIORARI ON POTENTIALLY DISPOSITIVE QUESTIONS OF LAW .................... 4

    A.    The Fact that the <u>Garcetti</u> Decision May Have a Dispositive Effect on the Instant
Case Weighs Heavily In Favor of Granting the Stay ......................................................... 5

    B.    The Additional Factors of Judicial Economy, Public Welfare, and Potential
Prejudice to Plaintiff All Weigh Strongly In Favor of Granting a Stay ............................ 8

II.    ALTERNATIVELY, THE PRESENT CASE SHOULD BE STAYED PENDING THE
RESOLUTION OF A PARALLEL CRIMINAL MATTER INVOLVING
SIGNIFICANTLY SIMILAR FACTS AND LAW. .......................................................... 10

    A.    Factual Background ....................................................................................................... 11

    B.    An Application of the Six-Factor Test Demonstrates the Need to Stay the Present
Civil Matter Pending the Conclusion of the Criminal Matter .......................................... 12

III.   THIS MOTION TO STAY IS A RESPONSIVE PLEADING AND, AS SUCH,
SHOULD POSTPONE THE TIMELY FILING OF AN ANSWER UNTIL ITS
RESOLUTION ................................................................................................................ 19

CONCLUSION .......................................................................................................................... 21

000000.0

# TABLE OF AUTHORITIES

**Cases**

Adelphia Communications Secs. Litig.,
    2003 U.S. Dist. LEXIS 9736,
    (E.D. Pa. May 13, 2003) ............................................................................................ 7, 9, 17

Ceballos v. Garcetti,
    361 F.3d 1168 (11th Cir. 2004) .......................................................................................... 1, 6

Circuit City Stores, Inc. v. Citgo Petroleum Corp.,
    1994 U.S. Dist. LEXIS 12634,
    (E.D. Pa. Sept. 7, 1994) ................................................................................................ 20

Connick v. Myers,
    461 U.S. 138 (1983).................................................................................................................. 5, 7

Ex Parte Ridgeway,
    2002 U.S. Dist. LEXIS 21335,
    (E.D. La. Oct. 31, 2002) ........................................................................................................ 4

First Citizens Mun. Corp. v. Pershing Div. of Donaldson, Lufkin & Jenrette Secs. Corp.,
    546 F. Supp. 884 (N.D. Ga. 1982)......................................................................................... 20

Garcetti v. Ceballos, cert. granted,
    125 S.Ct. 1395,
    161 L. Ed. 2d 188 (Feb. 28, 2005) .................................................................................. passim

Godlewski v. Affiliated Computer Servs., Inc.,
    210 F.R.D. 571 (E.D. Va. 2002) ............................................................................................ 20

Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.,
    87 F.R.D 53 (E.D. Pa. 1980)...................................................................................................... 9

Gonzalez v. City of Chicago,
    239 F.3d 939 (7th Cir. 2001) ..................................................................................................... 7

Hicks v. Clark,
    No 05-445-GMS ...................................................................................................................... 17

Huffman v. OPM,
    263 F.3d 1341 (Fed. Cir. 2001) ................................................................................................. 7

Int'l Ass'n of Entrepreneurs of Am. v. Angoff,
    58 F.3d 1266 (8th Cir. 1995) .................................................................................................. 20

Intravascular Research Ltd. v. Endosonics Corp.,
    994 F. Supp. 564 (D. Del. 1998) .................................................................................. 19

Landis v. N. Amer. Co.,
    299 U.S. 248 (1936) ......................................................................................... 4, 10

Literary Works in Elec. Databases Copyright Litig.,
    2001 U.S. Dist. LEXIS 2047,
    (S.D.N.Y. Mar. 1, 2001) .................................................................................. 4, 10

Maloney v. Gordon, et al.,
    328 F. Supp. 2d 5008 (D. Del. 2004) ............................................... 11, 14, 17, 19

Marshel v. AFW Fabric Corp.,
    552 F2d 471 (2d Cir. 1977) ................................................................................. 7

Michael v. Ghee,
    325 F. Supp. 2d 829 (N.D. Ohio 2004) ......................................................... 4, 8, 9

Miss. Band of Choctaw Indians v. Miss.,
    C.A. No. J90-0386(B),
    1991 U.S. Dist. LEXIS 19397,
    (S.D. Miss. April 9, 1991) ................................................................................. 8

Pickering v. Board of Education,
    391 U.S. 563 (1968) ......................................................................................... 5, 7

Reyes v. Freebery, et al.,
    C.A. No. 02-1283-KAJ,
    2004 U.S. Dist. LEXIS 15018
    (D. Del. July 30, 2004) .................................................................................. 11, 12

Riddell v. Gordon,
    C.A. No. 04-1201-KAJ,
    2004 U.S. Dist. LEXIS 25811
    (D. Del. Dec. 15, 2004) .............................................................................. 11, 12, 14

Roth v. Veteran's Admin. of the U.S.,
    856 F.2d 1401 (9th Cir. 1988) ............................................................................ 7

SEC v. Dresser Indus., Inc.,
    628 F.2d 1368 (D.C. Cir. 1980) (*en banc*),
    cert. denied, 449 U.S. 993 (1980) .................................................................. 18

Sparr v. Ward,
    306 F.3d 589 (8th Cir. 2002) ............................................................................. 7

DB02:5029418.1                                        000000.0

Sumner v. McCall,
   103 F. Supp. 2d 555 (N.D.N.Y. 2000)................................................................. 5

Terrell v. University of Texas System Police,
   792 F.2d 1360 (5th Cir. 1986) ........................................................................... 7

Thompson v. Scheid,
   977 F.2d 1017 (6th Cir. 1992) ........................................................................... 7

Tobin v. Gordon, et al.,
   C.A. No. 04-1211-KAJ,
   2004 U.S. Dist. LEXIS 25812
   (D. Del. Dec. 15, 2004)............................................................................ 11, 12, 20

U.S. v. Gordon, et al.,
   No. 04-CR-63............................................................................................ 10, 13, 17

U.S. v. Smith,
   776 F.2d 1104 (3d Cir. 1985 ........................................................................... 9, 19

Urofsky v. Gilmore, III,
   216 F.3d 401 (4th Cir. 2000) ............................................................................. 7

Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.,
   7 F. Supp. 2d 523 (D.N.J. 1998) ..................................................................... 8, 12

**Other Authorities**
9 Del. C. § 1404 ................................................................................................. 1, 6

Wright & Miller, Federal Practice & Procedure, (3d ed. 2004) ................................... 20

## NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF FACTS

On June 29, 2005, Plaintiff Robert I. Hicks filed a complaint against Paul G. Clark ("Clark"), Patty Powell ("Powell"), Karen Venezky ("Venezky"), Joseph Reda ("Reda"), George Smiley ("Smiley"), Bill Bell ("Bell"), Timothy Sheldon ("Sheldon") and New Castle County ("NCC") (collectively "Defendants"). Plaintiff's Complaint alleges that Defendants violated his First Amendment rights by retaliating against him in his employment capacity as NCC Auditor. (D.I. 1). Specifically, Plaintiff alleges that Defendants violated his rights of free speech, belief and association and his right to be free of race discrimination. (D.I. 1 at ¶1). Plaintiff contends that he was wrongfully terminated for exposing "waste, inefficiency, corruption, fraud and illegality in County Council and County government."

Plaintiff's Complaint is intertwined inextricably with First Amendment claims. Plaintiff alleges that at all relevant times he was acting within the scope of his employment and pursuant to his employment duties. Plaintiff alleges that at all relevant times he was speaking as an employee and not as a citizen. Plaintiff alleges that Defendants engaged in wrongful retaliation based on Plaintiff's political speech, association, or belief. As a matter of law Plaintiff was required to make such reports and engage in such speech to fulfill the statutory requirements of the position of County Auditor. See 9 Del. C. § 1404.

In a recent decision by the United States Court of Appeals for the Ninth Circuit, the court held that the fact that a plaintiff speaks at work pursuant to his employment responsibilities did not remove the protections of the First Amendment. Ceballos v. Garcetti, 361 F.3d 1168, 1175 (9th Cir. 2004). The special concurrence, however, disagreed. The concurring judge argued that prior Ninth Circuit precedent should be overruled so as to enable courts to distinguish between speech as a citizen, which would be protected under the First

Amendment, and speech made merely as an employee in the scope of public employment, which would receive no constitutional protection. Id. at 1193-94.

The United States Supreme Court granted certiorari and the appeal will be heard during the October 2005 term. Garcetti v. Ceballos, cert. granted, 125 S.Ct. 1395, 161 L. Ed. 2d 188 (Feb. 28, 2005) (Supreme Court Docket No. 04-473). Certiorari was granted to decide two questions: (1) whether job-related speech made pursuant to the duties of employment should receive First Amendment protection because it touches on a matter of public concern or does First Amendment protection also require the speech to be engaged in "as a citizen;" and (2) whether review is needed to resolve the Circuit split on the first issue.

The questions presented to the United States Supreme Court bear directly on the validity of Plaintiff's claims. Because the legal issues on which Plaintiff's complaint is grounded are currently pending before the Supreme Court, Defendants have filed this Motion asking the Court to grant a stay of this case pending resolution of the Garcetti case by the Supreme Court.

In addition, Defendants seek a stay because this case relates almost entirely to the same facts that concern pending criminal cases involving the former County Executive and his Chief Administrator. Other civil cases concerning the issues raised in this case have already been stayed pending resolution of the criminal cases, and the instant case should also be stayed on that ground.

2

## SUMMARY OF ARGUMENT

Defendants' Motion to Stay is supported by law and fact and should be granted for the following reasons:

1.    The issues forming the gravamen of Plaintiff's complaint are currently set to be heard by the United States Supreme Court during its October term.

2.    The issues forming the gravamen of Plaintiff's complaint concern facts that relate to pending criminal cases.

3.    The Motion to Stay, like a 12(b) motion, falls within the ambit of a pre-answer filing, thereby delaying the need to file a responsive pleading.

Wherefore, Defendants request that this Court grant their Motion to Stay and that the Court extend the time for filing an Answer until resolution of this Motion.

DB02:5029418.1                                                                 000000.0

**ARGUMENT**

I.    **THE PRESENT MATTER SHOULD BE STAYED PENDING THE RESOLUTION OF THE <u>GARCETTI</u> CASE, IN WHICH THE SUPREME COURT HAS GRANTED CERTIORARI ON POTENTIALLY DISPOSITIVE QUESTIONS OF LAW.**

The power to stay proceedings is "incidental to the power inherent in every court." <u>Landis v. N. Amer. Co.</u>, 299 U.S. 248, 254-55 (1936).  The United States Supreme Court has indicated that when deciding whether to exercise its power to stay proceedings, the courts must engage in a balancing test in order to weigh the competing interests. <u>Id.</u> at 255.  In determining whether to grant a stay, the courts examine (1) whether the legal issue pending before the Supreme Court is so closely related as to be dispositive on the issue; and (2) whether the balancing of the harms favors a stay.  <u>See e.g.</u>, <u>Michael v. Ghee</u>, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004); <u>Ex Parte Ridgeway</u>, 2002 U.S. Dist. LEXIS 21335, at *8 (E.D. La. Oct. 31, 2002); <u>In re Literary Works in Elec. Databases Copyright Litig.</u>, 2001 U.S. Dist. LEXIS 2047, at *7 (S.D.N.Y. Mar. 1, 2001).

Generally, there are three factors to be considered in the balancing test.  <u>See,</u> <u>Michael</u>, 325 F. Supp. 2d at 831 (citing <u>Landis</u>, 299 U.S. at 255).  These three factors include: (1) the judicial economy to be saved by waiting for the resolution of a dispositive decision; (2) the public welfare; and (3) the hardship or prejudice to the party opposing the stay, given its duration.  <u>Id.</u>  When applied to the present case, these factors all weigh heavily in favor of granting the present Motion to Stay pending the decision of the United States Supreme Court in <u>Garcetti v. Ceballos</u>, (Supreme Court Docket 04-473) (docketed for Oct. 2005 term) (questions presented available at http://www.supremecourtus.gov/docket /04-473.htm).

000000.0

A.    **The Fact that the <u>Garcetti</u> Decision May Have a Dispositive Effect on the Instant Case Weighs Heavily In Favor of Granting the Stay**

Where the case on appeal to the Supreme Court may have a dispositive effect on the instant matter, the court should weigh this factor heavily in favor of granting the stay. <u>Id.</u> (granting a stay where the Supreme Court's decision had the "potential to be completely dispositive"); <u>see also</u> <u>Sumner v. McCall</u>, 103 F. Supp. 2d 555 (N.D.N.Y. 2000) (granting a motion to stay where "an important decision by the Supreme Court is imminent, and could well require profound changes" in the court's adjudication of the issues). In the present case, the Supreme Court has granted certiorari to decide the exact question of law on which Plaintiff's Complaint is based. The Supreme Court granted certiorari in <u>Garcetti</u> to decide the following questions:

1.  Should a public employee's purely job related speech, expressed strictly pursuant to the duties of employment, be cloaked with First Amendment protection simply because it touches on a matter of public concern, or should First Amendment protection also require the speech to be engaged in "as a citizen," in accordance with this Court's holdings in <u>Pickering v. Board of Education</u>, 391 U.S. 563 (1968) ) and <u>Connick v. Myers</u>, 461 U.S. 138 (1983).

2.  Is immediate review by this Court necessary to address the growing inter-circuit conflict on the question of whether a public employee's purely job-related speech is constitutionally protected, especially where the lack of uniformity dramatically impacts the ability of all public employers to effectively manage their respective agencies.

(Supreme Court Docket 04-473).

The issue in the present case is identical to what will be decided by the Supreme Court in <u>Garcetti</u> during its October term. Plaintiff states that all of the speech at issue was made during the course of and pursuant to the job duties of his employment as County Auditor. Plaintiff's speech related to "fiscal and financial matters." (D.I. 1 at ¶36). By statutory prescription, the County Auditor's employment duties **required** him to report such matters to the

5

000000.0

County Executive and County Council. See 9 Del. C. § 1404 (The County Auditor "*shall*" report any "unauthorized, illegal, irregular or unsound practices.")(emphasis supplied). When a public employee is bound to report his findings or to speak out about his suspicions, his speech should be considered to have been made strictly pursuant to his job duties.

In Ceballos v. Garcetti, the Court of Appeals for the Ninth Circuit addressed the issue of whether speech expressed pursuant to an employee's job duties should receive First Amendment protection simply because the speech involved a matter of public concern, or whether, instead, an employee must be speaking as a citizen in order to receive First Amendment protection. 361 F.3d 1168 (9th Cir. 2004). Plaintiff Ceballos, a deputy district attorney, had reported to his supervisor that he suspected a police officer may have falsified a search warrant. Id. at 1171. He was instructed to write a memo summarizing his findings and subsequently was told to revise the memo to make it less accusatory. Id. The prosecution continued, and Ceballos was called to testify about his investigation and findings at a hearing challenging the validity of the search warrant. Id. Ceballos claimed that he was retaliated against for these actions, which violated his First Amendment right to speak on a matter of public concern. Id. at 1171-72.

The Ninth Circuit held that his speech was constitutionally protected. Id. at 1174. The fact that his speech was made pursuant to his employment duties did not vitiate such protections. Id. The special concurrence, however, disagreed and argued that, in order for First Amendment protections to apply, the employee must be speaking as a citizen and not strictly as an employee carrying out his job duties. Id. at 1185. The concurrence argued that speaking at work about a work-related matter was not "speech as a citizen" and, therefore, was ineligible for constitutional protection. Id.

The concurring judge agreed with the majority insofar as the Ninth Circuit's controlling precedent in <u>Roth v. Veteran's Admin. of the U.S.</u>, 856 F.2d 1401 (9th Cir. 1988) dictated their holding.  <u>Id.</u>  However, he submitted that <u>Roth</u> had been wrongly decided and should be overruled because it had improperly applied the Supreme Court's decisions in <u>Pickering v. Board of Education</u>, 391 U.S. 563 (1968) and <u>Connick v. Myers</u>, 461 U.S. 138 (1982).  <u>Id.</u>  He argued that a First Amendment analysis must hinge on the role of the speaker as citizen or employee.  Noting the "deep confusion within the circuits" over the scope of <u>Connick</u> and its progeny, the special concurrence pointed out the need for review by the Supreme Court. <u>Id.</u> at 1188. [1]

In the present case, Plaintiff's complaint is based on allegations that he was retaliated against because of protected speech he made in the scope of his employment as County Auditor.  If the Supreme Court determines that speech "strictly pursuant to the duties of employment" does not receive First Amendment protection, Plaintiff's constitutional claims must be dismissed.  Because the Supreme Court's review of <u>Garcetti</u> is likely to have a significant, if not dispositive, impact on the present case, a stay should be granted.  The Court should properly exercise its power to stay the present proceedings because a higher court is close to settling an important issue of law bearing directly on the action.  <u>See e.g.</u>, <u>Marshel v. AFW Fabric Corp.</u>, 552 F2d 471, 472 (2d Cir. 1977) (per curiam) (instructing district court to stay

---

[1] <u>See</u>, <u>e.g.</u>, <u>Sparr v. Ward</u>, 306 F.3d 589, 594 (8th Cir. 2002)("When a public employee's speech is purely job-related, her speech will not be deemed a matter of public concern."); <u>Gonzalez v. City of Chicago</u>, 239 F.3d 939, 941-2 (7th Cir. 2001)(police officer's reports, made pursuant to his official duties, regarding police misconduct were not constitutionally protected); <u>Huffman v. OPM</u>, 263 F.3d 1341, 1352 (Fed. Cir. 2001)(if reporting wrongdoing by government employees through normal channels is part of employee's normal duties, that speech is not protected by the federal Whistleblower Act since "the core purposes of the WPA are simply not implicated by such reporting."); <u>Urofsky v. Gilmore, III</u>, 216 F.3d 401 (4th Cir. 2000)("[C]ritical to a determination of whether employee speech is entitled to First Amendment protection is whether the speech is 'made primarily in the [employee's] role as citizen or primarily in his role as employee.'" (quoting <u>Terrell v. University of Texas System Police</u>, 792 F.2d 1360, 1362 (5th Cir. 1986);  <u>Thompson v. Scheid</u>, 977 F.2d 1017, 1021 (6th Cir. 1992).

proceedings pending a Supreme Court decision in a closely related case which was likely to determine the question of liability).

   **B.    The Additional Factors of Judicial Economy, Public Welfare, and Potential Prejudice to Plaintiff All Weigh Strongly In Favor of Granting a Stay.**

   The potentially dispositive impact of the Supreme Court's decision in <u>Garcetti</u> on the present case weighs strongly in favor of granting the Motion to Stay.  <u>See</u> <u>Michael</u>, 325, F. Supp. 2d at 831.  Additional factors also weigh in favor of the Stay.

   **1.    Judicial Economy Weighs in Favor of Stay.**

   Judicial economy strongly favors a stay.  <u>See</u> <u>Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.</u>, 7 F. Supp. 2d 523, 528 (D.N.J. 1998)(stating that every court has an interest in managing its caseload with efficiency).  This case is complex and involves no less than nine defendants, seven of whom are elected officials.  (D.I. 1).  The Supreme Court's answer to the question of law before it could negate the need for this Court to "delve into the vast majority of the legal issues" presented in the Complaint, and the plethora of facts related thereto.  <u>Id.</u> Therefore, it would make little sense for the Court to begin the judicial process when the Supreme Court's decision may invalidate or greatly narrow the entire Complaint.  Instead, it would be more prudent to wait for further guidance from the Supreme Court before embarking on litigation involving the present issues.  <u>See</u> <u>Miss. Band of Choctaw Indians v. Miss.</u>, C.A. No. J90-0386(B), 1991 U.S. Dist. LEXIS 19397, *14 (S.D. Miss. April 9, 1991)(additionally noting that should it decide the constitutional issues before the Supreme Court's decision, the non-prevailing party would "certainly appeal" and, therefore, by granting a stay, the court decreased the "likelihood that any unnecessary appeal will be taken.").  Judicial economy, therefore, weighs heavily in favor of a stay.

### 2.    The Public Interest Weighs in Favor of the Stay.

There is no harm to the public interest in granting a stay of the present matter. The public has a "substantial interest in the integrity or lack of integrity of those who serve them in public office." Maloney v. Gordon, et al., 328 F. Supp. 2d 508, 513 (D. Del. 2004) (citing U.S. v. Smith, 776 F.2d 1104, 1114 (3d Cir. 1985. The interest of the public, then, is in having the allegations resolved as fairly and efficiently as possible. This can be most effectively accomplished by waiting for the Supreme Court's decision before moving forward on the merits of the case. Otherwise, unnecessary inquiry will be undertaken into matters involving public officials that might well be determined subsequently to be nonissues in this litigation.

### 3.    The Insignificant Potential for Harm to Plaintiff Weighs in Favor of the Stay.

Finally, Plaintiff will not be prejudiced by a stay. A brief delay in processing Plaintiff's claim until the decision of the Supreme Court has been rendered will cause no prejudice or hardship to Plaintiff. In evaluating the plaintiff's burden resulting from a stay, the plaintiff should "demonstrate a particularly unique injury, such as the dissipation of assets or an attempt to gain an unfair advantage from the stay." In re Adelphia Communications Secs. Litig., 2003 U.S. Dist. LEXIS 9736, at *11 (E.D. Pa. May 13, 2003). Plaintiff must establish more hardship than a mere delay in his right to expeditiously pursue his claim. See Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc., 87 F.R.D 53, 56 (E.D. Pa. 1980). In the present case, Plaintiff can allege no such additional prejudice.

In fact, because the Supreme Court will decide the case during its October term, Plaintiff is guaranteed an expeditious resolution of the issue. Oral arguments are scheduled to be heard before the Court on October 12, 2005. This brief delay is insufficient to outweigh the factors favoring a stay of these proceedings. See Michael, 325 F. Supp. 2d at 833 (granting a

9

stay where the resulting delay would be, "in all likelihood, less than a year."); In re Literary

Works, 2001 U.S. Dist. LEXIS at *7 ("a stay of several months will cause no prejudice or

hardship" to the plaintiffs). Upon a final decision by the Supreme Court, this Court can promptly

adjudicate the pending claims, causing Plaintiff no further delay.

The Garcetti decision by the Supreme Court potentially could be dispositive of

Plaintiff's claims. The decision "may not settle every question of fact and law" before this

Court, "but in all likelihood it will settle many and simplify them all." Landis, 299 U.S. at 256.

In light of the potentially dispositive weight of the pending Garcetti case, as well as the increased

judicial economy, public interest, and lack of prejudice to the Plaintiff, the Motion to Stay should

be granted.

## II.    ALTERNATIVELY, THE PRESENT CASE SHOULD BE STAYED PENDING THE RESOLUTION OF A PARALLEL CRIMINAL MATTER INVOLVING SIGNIFICANTLY SIMILAR FACTS AND LAW.

At its core, Plaintiff's Complaint alleges that, pursuant to his employment duties,

he attempted to expose various wrongdoings by County Council and County Government. At

the center of the alleged wrongdoings are former County Executive Thomas P. Gordon

("Gordon") and his Chief Administrative Officer, Sherry Freebery ("Freebery"). A criminal

investigation into the Gordon Administration resulted in a federal criminal indictment involving

many of the same matters (the "Indictment") against Gordon and Freebery, currently scheduled

for trial in the District Court during October 2005 (the "Criminal Matter").[2] Because the present

case involves significant legal and factual similarities, this Court should grant the Motion to Stay

pending the resolution of the parallel Criminal Matter. U.S. v. Gordon, et al., No. 04-CR-63.

---

[2] An appeal has been filed by the U.S. Attorney's Office and its request for a continuance of the trial is pending.

10

A.     **Factual Background**

The present civil case (the "Civil Matter") is the latest in a series of civil lawsuits filed against New Castle County ("NCC") and county officials in connection with the allegations in the Criminal Matter. Each of these cases involves allegations related to acts committed by Gordon, Freebery, and other members of the Gordon administration during their tenure in public office.

The present matter involves nearly identical factual undertones, and contains allegations against various members of the Council who are identified in the Complaint as allies of the Gordon administration, relating to acts committed during the tenure in public office of the Gordon administration. Even a cursory overview of the Complaint demonstrates the considerable overlap between the Criminal Matter and the present case. The present matter alleges that members of County Council retaliated against Plaintiff for speaking out against the alleged misuse of their positions by Gordon and Freebery, some of which allegedly involved or benefited one or more of the individual defendants in this case.

In four related civil cases, the Court has stayed other pending civil litigation until the Criminal Matter is resolved. See Tobin v. Gordon, et al., C.A. No. 04-1211-KAJ, 2004 U.S. Dist. LEXIS 25812 (D. Del. Dec. 15, 2004); Riddell v. Gordon, C.A. No. 04-1201-KAJ, 2004 U.S. Dist. LEXIS 25811 (D. Del. Dec. 15, 2004); Reyes v. Freebery, et al., C.A. No. 02-1283-KAJ, 2004 U.S. Dist. LEXIS 15018 (D. Del. July 30, 2004); Maloney v. Gordon, et al., 328 F. Supp. 2d 5008 (D. Del. 2004). As in the present case, the four stayed cases share significant factual overlap with the allegations in the Indictment. All four of those cases involve allegations related to acts committed by Gordon and Freebery during their tenure in public office. Each of the four cases was filed against Gordon, Freebery, NCC, and various other individual defendants.

In the stayed cases, as in the present case, the plaintiffs alleged illegal retaliation in the employment context.

Because the allegations in the present matter so significantly overlap with those made in the Indictment in the Criminal Matter, Defendants request the Court to continue its recent line of precedent by granting a stay of the present Civil Matter pending the resolution of the Criminal Matter.

**B.    An Application of the Six-Factor Test Demonstrates the Need to Stay the Present Civil Matter Pending the Conclusion of the Criminal Matter.**

In determining whether to stay a civil proceeding while a criminal proceeding is pending, this Court applies a six-factor test. See Riddell, 2004 U.S. Dist. LEXIS at *3; Reyes v. Freebery, et al., No. 02-1283-KAJ, 2004 U.S. Dist. LEXIS 15018, at *7-8 (D. Del. July 30, 2004) (citing In re Adelphia Communications Secs. Litig., 2003 U.S. Dist. LEXIS at *7). These six factors include: (1) the extent to which the issues overlap; (2) the status of the criminal case; (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay; (4) the burden on the defendants; (5) the interests of the court; and (6) the public interest. See Tobin, 2004 U.S. Dist. LEXIS at *4. When applied to the present case all six factors weigh heavily in favor of granting the present Motion to Stay pending the conclusion of the Criminal Matter.

**1.    There is Repeated and Significant Factual Overlap Between the Pending Criminal Case and This Civil Matter**

The similarity of issues is the most important threshold factor in determining whether a proceeding should be stayed. See Reyes, 2004 U.S. Dist. LEXIS 15018, at *8 (citing Walsh Secs., Inc., 7 F. Supp. 2d at 527). The repeated and significant overlap of issues between

12

the present matter and the Criminal Matter demonstrates the need to stay the present matter.  The

facts alleged in Plaintiff's Complaint mirror the allegations made in the Indictment.

Generally, Plaintiff's Complaint alleges that NCC, the defendant Council

members, and various members of the Gordon administration engaged in illegal retaliatory

employment practices after Plaintiff spoke out and/or opposed allegedly illegal conduct.  (D.I. 1

at ¶1). The protected activity which Plaintiff alleges that he undertook involved his attempt to

"expose . . . corruption, fraud and illegality in County Council and County Government."  (D.I. 1

at ¶36).  Importantly, the Indictment levels the same basic allegations.  The Indictment contends

that

> The primary objectives of Defendants Thomas P. Gordon and
> Sherry L. Freebery were to: (a) dominate, misuse and control the
> County and its property and resources, including the services of
> County employees, for their personal benefit and enrichment; (b)
> participate in County matters in which Gordon and Freebery had
> conflicts of interest, fail to disclose their conflicts of interest, and
> use County resources, including the services of County employees
> and County money, to conceal their conflicts of interest and
> participation in matters in which they had conflicts of interest; and
> (c) use the authority of their offices to create an atmosphere of
> intimidation so that County employees would comply with orders,
> directions, and requests such County employees considered to be
> unethical or unlawful.

U.S. v. Gordon, (Indictment at ¶3).

Similarly, the Complaint alleges that each of the individual defendants are

somehow politically aligned with Gordon and Freebery.  (D.I. 1 at ¶¶5, 9, 12, 16).  Plaintiff

further alleges that some of the individual defendants were elected to office with Gordon and

Freebery's "material assistance."  (D.I. 1 at ¶¶6, 9, 13).  Plaintiff contends that because of their

political alliances with the now-indicted Gordon and Freebery, Plaintiff's allegations of

wrongdoing "antagonized" the individual defendants.  (D.I. 1 at ¶40).

The factual overlap between Plaintiff's allegations and the allegations made in the Indictment are numerous.  See Maloney, 328 F. Supp. 2d at 511 ("The strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil action involving the same matter.") (internal citations omitted); Riddell, id. at *4-*5 ("The cases clearly overlap to a significant degree.")  Not only will Gordon and Freebery be unavailable to give evidence in this case, but others, many of whom have been called to appear before the Grand Jury, will be reluctant to participate with the threat of criminal charges hovering in the background.  Therefore, a stay of the civil proceedings is appropriate and should be granted.

### a.    The Powell Campaign

For example, the Indictment alleges that Gordon and Freebery engaged in an "Election Scheme."[3]  The Indictment alleges that in furtherance of the Election Scheme, Gordon and Freebery "utilize[d] and divert[ed] improperly and unlawfully County resources, including County equipment and supplies and the services of County employees, to promote and support the activities of political candidates" including Patty Powell, a defendant in this case.  U.S. v. Gordon, (Indictment at ¶5A).  Specifically, the Indictment alleges that Gordon and Freebery directed and caused various County employees to devote paid working and vacation time to the Powell campaign.  (Indictment at ¶¶13C, 13D).  Additionally, the Indictment alleges that County employees were solicited and pressured to provide "resources, time and money" to the Powell campaign.  (Indictment at ¶15).

Plaintiff alleges that Powell was "an ally supporter or friend of Gordon and Freebery who was elected to office in 2002 as a result of the criminal activity of Gordon and

---

[3] The term "Election Scheme" and meaning thereof is borrowed from the District Court's opinion in Maloney, 328 F. Supp. 2d at 510.

DB02:5029418.1                                                    000000.0

Freebery." (D.I. 1 at ¶9). Just as alleged in the Indictment, Plaintiff's Complaint alleges that "Gordon and Freebery caused County employees to illegally perform political and campaign activities during working hours" on behalf of the Powell campaign. (D.I. 1 at ¶9). The Complaint then mirrors the language of the Indictment in stating that County employees were assigned to devote paid working and vacation time to the campaign. (D.I. 1 at ¶9A-C).

Plaintiff alleges that Powell's loyalty to Gordon and Freebery requires her to engage in a cover-up of the misuse of County resources. (D.I. 1 at ¶10). He makes similar claims directed to each of the individual defendants, insofar as they allegedly do not wish to employ a County Auditor who exposes "waste, inefficiency, corruption, fraud and illegality in County Council or County government." (D.I. 1 at ¶¶7, 10, 14, 17, 19, 21, 23).

The allegations in Plaintiff's Complaint share significant factual overlap with the allegations made in the Indictment as they relate to the "Election Scheme" and Gordon and Freebery's actions in the Powell campaign.

b.     **Conflicts of Interest**

A second significant area of overlap between Plaintiff's Complaint and the Indictment concerns allegations of various conflicts of interest in the County administration. Plaintiff alleges that he was unlawfully retaliated against for speaking out about a potential conflict of interest by Freebery. He alleges that, in 2004, he issued an audit report concerning a "suspicious contract" which would deliver business to Freebery's brother, "an obvious conflict of interest," and then, later, reported modification of this contract, which also stood to benefit Freebery's brother. (D.I. 1 at ¶¶14D-E). Plaintiff contends that he was terminated for, among other things, disclosing this conflict of interest in his audit reports and in his reports to County Council.

15

Similarly, the Indictment alleges that Freebery's involvement in various conflicts of interest, as well as her failure to disclose and/or attempt to conceal such conflicts, constituted unlawful activity, thereby subjecting her to criminal prosecution. (Indictment at ¶3B). The Indictment does not address allegations involving Freebery's brother but does allege that Freebery used the powers of her office for personal gain. The Indictment alleges that Freebery unlawfully accepted money in return for certain political favors and then engaged in a scheme to cover up the misuse of her office.

c.     **Scrutiny of County Government**

Plaintiff's Complaint states that the context of his protected speech centered around "a several year period of high scrutiny of the operation of County government, Gordon, Freebery and others by the FBI, IRS and the United States' Attorney's office which resulted in a far ranging multi count criminal indictment of three high County officials for racketeering and other crimes, including financial crimes involving misuse of taxpayer money." (D.I. 1 at 42). On the most fundamental level, Plaintiff's allegations are based on the inner workings of County government during the Gordon and Freebery administration.

The charges contained in the Complaint are based on the same allegations—that Gordon and Freebery misused their offices for their personal benefit and enrichment. Plaintiff alleges that when he spoke out or attempted to investigate the wrongdoings of the administration, County Council unlawfully terminated him in retaliation for such attempts.

Because the present matter and the Criminal Matter are based on virtually identical allegations, there is necessarily a tremendous amount of overlap of both factual and legal issues. The significant amount of overlapping issues thus requires the present matter to be stayed pending resolution of the Criminal Matters.

16

2.    **Gordon and Freebery Have Already Been Indicted in the Criminal Matter, Which is Scheduled to Go to Trial in October 2005, Subject To A Pending Appeal**

Gordon and Freebery were indicted on May 26, 2004, prior to the filing of Plaintiff's Complaint on June 29, 2005. U.S. v. Gordon, No. 04-CR-63; Hicks v. Clark, No 05-445-GMS (D.I. 1). Thus, two of the central figures in Plaintiff's allegations have already been indicted. If the present matter were to move forward, Gordon and Freebery may be penalized for invoking their Fifth Amendment rights, which they may be forced to assert sooner than they had anticipated. See Maloney, 328 F. Supp. 2d at 512.[4] Gordon and Freebery would be forced to choose between asserting their Fifth Amendment rights against self-incrimination, thereby inviting unavoidable prejudice to the defendants in the present case, or waiving those rights, thereby courting liability in the Criminal Matter. Their likely position is predictable, and would prejudice the defendants in their conduct of this case.

Additionally, because the present matter and the Criminal Matter share significant factual overlap, a stay is the proper mechanism to avoid "exposing criminal defense strategies" during discovery and future litigation. Maloney, 328 F. Supp. 2d at 512. Potential witnesses in the Criminal Matter, for example, would be disclosed during civil discovery. This risk also weighs in favor of granting the stay in the present matter. See In re Adelphia, 2003 U.S. Dist. LEXIS 9736, at *13 (such exposure "weighs strongly" in favor of staying the civil action).

3.    **Plaintiff's Interests in Expeditious Civil Proceedings Will Not Be Unduly Prejudiced By a Delay in the Present Matter.**

In evaluating the plaintiff's burden resulting from a stay, the plaintiff should demonstrate that he will suffer a "particularly unique injury." In re Adelphia, 2003 U.S. Dist.

---

[4] Upon information and belief, while the criminal trial is scheduled for October 2005, it may be postponed while certain issues are appealed to the Third Circuit by the U.S. Attorney's Office.

LEXIS 9736, at *11.  As discussed above, the potential harm to Plaintiff is minimal.  See supra

I.B.3.  Trial is scheduled to begin in October, subject to the pending request for a continuance,

and the Supreme Court is scheduled to hear oral arguments on October 12 in Garcetti.  Unless

Plaintiff is able to assert some other legitimate allegation of prejudice, Plaintiff's interest in an

expeditious proceeding will remain undisturbed.  Because Plaintiff is not unduly prejudiced, a

stay is appropriate.

> **4.      The Burden on Gordon and Freebery's Fifth
>          Amendment Rights Weighs in Favor of Granting the
>          Stay.**

As noted above, to have both matters pending simultaneously puts a heavy burden

on Gordon and Freebery's Fifth Amendment rights, as well as the Fifth Amendment rights of

other concerned parties.  This burden is properly considered when deciding whether to stay the

present matter.  See SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980) (en banc),

cert. denied, 449 U.S. 993 (1980).  Gordon and Freebery would be obvious witnesses in the

present civil case.  Should Gordon or Freebery waive his or her rights during discovery in the

present matter, they risk incriminating themselves in the Criminal Matter.  See In re Adelphia,

2003 U.S. Dist. LEXIS 9736, at *14.  The same is true of other persons involved in the civil case

who may be concerned about future involvement in related criminal matters.  Thus, it is likely

that concerned persons would invoke the Fifth Amendment, and discovery in the present case

would be disadvantaged.

> **5.      Staying the Present Matter Serves to Best Preserve the
>          Court's Interest in Judicial Efficiency.**

Staying this case will further judicial efficiency.  See Walsh Secs., Inc., 7 F. Supp.

2d at 528 (stating that every court has an interest in managing its caseload with efficiency).  It

would preserve the Court's resources to resolve common issues of fact in the present matter,

18

thereby relieving the Court of the need to make decisions about "potential discovery disputes that may affect the criminal case." Maloney, 328 F. Supp. 2d at 513 (internal citations omitted). As previously discussed, numerous possible witnesses might assert their Fifth Amendment rights if the present matter were not stayed. This would require the Court to decide a number of privilege issues during the civil discovery process. See In re Adelphia, 2003 U.S. Dist. LEXIS 9736, at *15. However, no such rulings would be required if the present matter is stayed.

> **6.      The Public Interest Favors Resolution of Criminal
>            Proceedings Against Public Officials**

There is no harm to the public interest in granting a stay of the present matter. As Judge Jordan noted in Maloney, the "public has a substantial interest in the integrity or lack of integrity of those who serve them in public office." 328 F. Supp. 2d at 513 (citing U.S. v. Smith, 776 F.2d 1104, 1114 (3d Cir. 1985)). The Criminal Matter involves allegations of improprieties committed by public officials in their roles as public servants. The interest of the public in having these allegations resolved as promptly and as fairly as possible weighs heavily in favor of granting the stay. The public's interest takes precedence over the interest of the civil litigant and as such, the stay is appropriate. See Maloney, 328 F. Supp. 2d at 513.

## III.    THIS MOTION TO STAY IS A RESPONSIVE PLEADING AND, AS SUCH, SHOULD POSTPONE THE TIMELY FILING OF AN ANSWER UNTIL ITS RESOLUTION

Defendants ask the Court to recognize the present Motion to Stay as a pre-answer motion and, as such, to delay the filing of an Answer until the Motion has been decided. "Historically, motions to stay have been recognized as tolling the time period for answering a complaint because pre-answer consideration of these motions have been found to maximize the effective utilization of judicial resources." Intravascular Research Ltd. v. Endosonics Corp., 994 F. Supp. 564, 567 n.3 (D. Del. 1998).

Motions filed pursuant to Rule 12(b) of the Federal Rules of Civil Procedure suffice as responsive pleadings in lieu of answers. See 5B Wright & Miller, Federal Practice & Procedure, 1346, at p. 46 (3d ed. 2004); Godlewski v. Affiliated Computer Servs., Inc., 210 F.R.D. 571, 572 (E.D. Va. 2002) (majority rule holds "that the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion"); Circuit City Stores, Inc. v. Citgo Petroleum Corp., 1994 U.S. Dist. LEXIS 12634, at *11-13 (E.D. Pa. Sept. 7, 1994) (same).  Federal courts have traditionally entertained additional types of pre-answer motions not specifically enumerated in the Federal Rules, including Motions to Stay.  See Int'l Ass'n of Entrepreneurs of Am. v. Angoff, 58 F.3d 1266, 1270 (8th Cir. 1995).  Motions to Stay are considered responsive pleadings in lieu of answers.  First Citizens Mun. Corp. v. Pershing Div. of Donaldson, Lufkin & Jenrette Secs. Corp., 546 F. Supp. 884, 886 (N.D. Ga. 1982).  Because the present Motion is considered a responsive pleading, the filing of Defendants' Answer should not be required until the resolution of the pending Motion to Stay.  See 5C Wright & Miller, Federal Practice & Procedure, 1360, at p. 77 (3d ed. 2004); see also Tobin v. Gordon et al., C.A. No. 04-1211-KAJ, 2004 U.S. Dist. LEXIS 25812 (D. Del. Dec. 15, 2004) (granting Motion to Stay and timely filing of an answer).

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request this Court to grant Defendants' Motion to Stay and to extend the time for filing an Answer until resolution of the pending Motion.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Sheldon N. Sandler, Esquire (No. 245)
Margaret M. DiBianca, Esquire (No. 4539)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6673, 5008
Facsimile: (302) 576-3330; 3476
ssandler@ycst.com
mdibianca@ycst.com
Attorneys for Defendants

Dated: September 6, 2005

21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROBERT I. HICKS,                              )
                               Plaintiff,     )
     v.                                       )
                                              )
PAUL G. CLARK, PATTY POWELL,                  )     C.A. No. 05-445 (GMS)
KAREN VENEZKY, JOSEPH REDA,                   )
GEORGE SMILEY, BILL BELL, and TIMOTHY         )
SHELDON, all individually and in their official )
capacities as members of the NEW CASTLE       )     TRIAL BY JURY DEMANDED
COUNTY COUNCIL, and NEW CASTLE                )
COUNTY, a Municipal Corporation,              )
                                              )
                               Defendants.    )

CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2005, I electronically filed a true and correct copy of

the foregoing **Defendants' Opening Brief in Support of Their Motion to Stay** with the Clerk of

the Court using CM/ECF, which will send notification that such filing is available for viewing and

downloading to the following counsel of record, and further that I caused copies of same to be hand-

delivered to:

> Thomas S. Neuberger, Esquire
> Stephen J. Neuberger, Esquire
> The Neuberger Firm, P.A.
> Two East Seventh Street, Suite 302
> Wilmington, DE 19801

> YOUNG CONAWAY STARGATT & TAYLOR, LLP

> Sheldon N. Sandler, Esquire (No. 0245)
> Margaret M. DiBianca, Esquire (No. 4539)
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, Delaware 198999-0391
> Telephone: (302) 571-6673, 5008
> Facsimile: (302) 576-3330; 3476
> ssandler@ycst.com, mdibianca@ycst.com
> *Attorneys for Defendants*