IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT I. HICKS,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>PAUL G. CLARK, PATTY POWELL,<br>KAREN VENEZKY, JOSEPH REDA,<br>GEORGE SMILEY, BILL BELL, and<br>TIMOTHY SHELDON, all individually and in<br>their official capacities as members of the NEW<br>CASTLE COUNTY COUNCIL, and NEW<br>CASTLE COUNTY, a Municipal Corporation,<br><br>　　　　　　　　　　Defendants. | C.A. No. 05-445-GMS |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STAY

Sheldon N. Sandler, Esquire (No. 0245)
Margaret M. DiBianca, Esquire (No. 4539)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 198999-0391
Telephone: (302) 571-6673, 5008
Facsimile: (302) 576-3330; 3476
ssandler@ycst.com
mdibianca@ycst.com
Attorneys for Defendants

Dated: October 14, 2005

# TABLE OF CONTENTS

                                                                                     **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT .......................................................................................................................... 1

I.      THE PRESENT MATTER SHOULD BE STAYED PENDING THE OUTCOME OF <u>GARCETTI</u>, IN WHICH THE SUPREME COURT'S DECISION MAY BE DISPOSITIVE OF THE PRINCIPAL ISSUES IN PLAINTIFF'S COMPLAINT. .............. 1

        A.      The <u>Garcetti</u> Decision May Be Dispositive of the Gravamen of Plaintiff's Complaint and, Therefore, Weighs Heavily In Favor of Granting the Stay. ............ 3

                1.      There Is No Requirement That the Supreme Court Case Be Potentially Dispositive of All of Plaintiff's Claims. ................................... 3

                2.      The <u>Garcetti</u> Decision, Even if Not Dispositive, Could Potentially Define the Contours of Plaintiff's Free Speech Claims. ............................. 5

                3.      Plaintiff's Race Discrimination Claim Is An Afterthought. ........................ 6

        B.      Judicial Economy, Public Welfare, and Minimal Hardship to Plaintiff All Weigh In Favor of Granting a Stay in the Present Case. ........................................ 7

                1.      Because the Principal Issues in the Case Will Be Narrowed, if Not Eliminated, Judicial Economy Weighs Heavily in Favor of the Stay. ........................................................................................................ 7

                2.      The Public Interest Requires a Complete and Thorough Analysis. .............. 8

                3.      A Stay In the Present Case Would Cause Minimal Hardship to Plaintiff. ....................................................................................................... 8

CONCLUSION ....................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

Baldassare v. N.J.,
   250 F.3d 188 (3d Cir. 2001) .................................................................................... 6

Garcetti v. Ceballos,
   (Supreme Court Docket 04-473) (docketed for Oct. 2005 term)
   (questions presented available at http://www.supremecourtus.gov/docket/04-473.htm) ........... 2

In re Literary Works In Electronic Databases Copyright Litigation,
   2001 U.S. Dist. LEXIS 2047,
   (S.D.N.Y. Mar. 1, 2001) ........................................................................................ 4

Landis v. N. Amer. Co.,
   299 U.S. 248 (1936) .............................................................................................. 4

Michael v. Ghee,
   325 F. Supp. 2d 829 (N.D. Ohio 2004) ............................................................. 2, 4, 8

Miss. Band of Choctaw Indians v. Miss.,
   C.A. No. J90-0386(B),
   1991 U.S. Dist. LEXIS 19397,
   (S.D. Miss. April 9, 1991) ...................................................................................... 7

U.S. v. Smith,
   776 F.2d 1104 (3d Cir. 1985) ................................................................................. 8

Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.,
   7 F. Supp. 2d 523 (D.N.J. 1998) ............................................................................. 7

West v. U.S.A.,
   2000 U.S. Dist. LEXIS 3999,
   (D. Minn. Feb. 18, 2000) ....................................................................................... 4

**Other Authorities**

9 Del. C. §1401(a) ......................................................................................................... 1

9 Del. C. §§1404-1406 .................................................................................................. 1

9 Del. C. §1405(b) ........................................................................................................ 6

9 Del. C. §1409 ............................................................................................................. 6

## ARGUMENT

I. **THE PRESENT MATTER SHOULD BE STAYED PENDING THE OUTCOME OF GARCETTI, IN WHICH THE SUPREME COURT'S DECISION MAY BE DISPOSITIVE OF THE PRINCIPAL ISSUES IN PLAINTIFF'S COMPLAINT.**

It is interesting to note that in his Complaint, Plaintiff repeatedly asserts that in his capacity as the County Auditor, he spoke out to numerous designated groups and individuals about supposed "waste, inefficiency, corruption, fraud and illegality in County Council and County government," (D.I. 1 at ¶ 36), in essence wrapping himself in the First Amendment as a public employee. Indeed, he says in the very first paragraph of his Complaint that he was "a diligent and effective governmental auditor whose career was abruptly and illegally ended because he exposed illegality and corruption in high places."[1] (D.I. 1 at ¶1). He makes no mention anywhere in his Complaint about acting as a citizen rather than as the County Auditor. Now that the Supreme Court has accepted certiorari in a case that poses the question whether a public employee who, in his capacity as an employee, engages in public speech that allegedly results in his dismissal is entitled to invoke the First Amendment, the Plaintiff is running away from his Complaint as fast as he can.

But the gravamen of Plaintiff's Complaint is clear. Plaintiff alleges that during the execution of his job duties as County Auditor and not in any private capacity as a citizen, he encountered what he believed to be various questionable activities. Plaintiff alleges that he

---

[1] It will come as no surprise that Defendants disagree with Plaintiff's characterization of the quality of his performance. At the appropriate time, Defendants will show that he failed to perform his job duties by, among other things, failing to pay County bills in a timely manner, which resulted in several embarrassing situations; failing to process grant requests in a timely manner, which resulted in complaints from community nonprofit organizations; often being unavailable during the work day; making questionable financial decisions; failing to fulfill the statutory requirement of providing a report no later than six months after the end of the fiscal year; and being uncooperative with those with whom he was required to work closely. 9 Del. C. §§1404-1406. He served "at the pleasure of the County Council," 9 Del. C. §1401(a) and was removed by a majority of the Council after it became clear that he was not performing his job adequately.

1

spoke out to various groups and individuals in his capacity as the County Auditor, in an attempt to expose what he perceived to be "illegality and corruption in high places." (D.I. 1 at ¶1). In sum, Plaintiff contends that he was the victim of unlawful retaliation based on the exercise of his right to free speech as a public employee, not as a citizen. (D.I. 1 at ¶1).

The Supreme Court of the United States has granted certiorari to determine the contours of such a claim, and the oral argument took place on October 12, 2005. See Garcetti v. Ceballos, (Supreme Court Docket 04-473) (docketed for Oct. 2005 term) (questions presented available at http://www.supremecourtus.gov/docket/04-473.htm). In Garcetti, the Supreme Court will decide whether a public employee who engages in job-related speech on a matter of public concern is entitled to receive the protection of the First Amendment. Id. Because the Supreme Court will decide not only whether such a claim retains validity, but also, presumably, the analytical framework for deciding such a claim, consistent precedent requires that the present case be stayed pending the Court's decision in Garcetti. See e.g., Michael v. Ghee, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004).

The propounded balancing test, used by both Plaintiff and Defendants, requires the following four competing interests to be weighed in deciding whether to stay a case pending a decision from a higher court:

1. Whether the pending legal issue is so closely related as to be dispositive on the issue;
2. Whether judicial economy will be saved by waiting for the resolution;
3. The public welfare; and
4. The hardship or prejudice to the party opposing the stay, given its duration.

Michael, 325 F. Supp. 2d at 831. All four factors weigh heavily in favor of granting the stay.

A.  **The <u>Garcetti</u> Decision May Be Dispositive of the Gravamen of Plaintiff's Complaint and, Therefore, Weighs Heavily In Favor of Granting the Stay.**

Plaintiff does not deny that the <u>Garcetti</u> decision may have a dispositive effect on his First Amendment claims. (D.I. 6 at 1). Instead, Plaintiff now argues, inconsistently with his position in his Complaint, that his speech can be neatly categorized, according to the audience and regardless of the content, into speech made as a "citizen" and speech made pursuant to his job duties. In this way, Plaintiff argues, even if the Supreme Court were to decide that a public employee's speech relating to his job duties is unprotected by the First Amendment, the parts of his speech made as a "citizen" would, he contends, remain undisturbed.

Notably, Plaintiff's Complaint said nothing about his acting as a "citizen." Indeed, the audiences to which Plaintiff says he spoke would necessarily have perceived him as acting in his official capacity when he presented himself as the County Auditor or was known as such, and when he spoke about audit-related matters that were inextricably intertwined with his role as the Auditor. <u>See</u>, Par. 2 <u>infra</u>. The Supreme Court's decision has the potential to resolve the primary portion of Plaintiff's claims.

1.  **There Is No Requirement That the Supreme Court Case Be Potentially Dispositive of All of Plaintiff's Claims.**

Plaintiff argues that his race discrimination, state whistleblower retaliation, and political belief and association claims would remain intact regardless of the Supreme Court's decision in <u>Garcetti</u>. (D.I. 6 at 1). As discussed, the <u>Garcetti</u> decision has the potential to eliminate Plaintiff's free speech claims, which Plaintiff acknowledges. The fact that <u>Garcetti</u>

3

may not impact Plaintiff's other claims is irrelevant.[2] Plaintiff cites no precedent requiring the pending case to potentially be dispositive of *all* of Plaintiff's claims. There is no such requirement. Instead, the pending case must potentially be dispositive of only one of Plaintiff's main claims. The Garcetti case certainly meets this requirement.

Plaintiff cites Michael v. Ghee in support of his claim. 325 F. Supp. 2d at 832. Under those facts, the court held that the pending Supreme Court case "ha[d] the potential to be completely dispositive of the instant case," and that circumstance weighed heavily in favor of a stay. Michael, 325 F. Supp. 2d at 832. Notably, he cites no case holding that a stay can *only* be granted where the pending appeal has the potential to completely dispose of the case. In fact, all existing cases hold precisely the opposite.

In In re Literary Works In Electronic Databases Copyright Litigation, the district court granted a stay after concluding that a decision in the case pending before the United States Supreme Court "may not settle every question of fact and law, . . but in all likelihood it will settle many and simplify them all." 2001 U.S. Dist. LEXIS 2047, at *9 (S.D.N.Y. Mar. 1, 2001) (quoting Landis v. N. Amer. Co., 299 U.S. 248, 256 (1936)). Accord West v. U.S.A., 2000 U.S. Dist. LEXIS 3999, at *4 (D. Minn. Feb. 18, 2000) (ordering a stay of proceedings based on the fact that the related case could be "dispositive of the *principal* issues") (emphasis added).

Plaintiff is trying to convert the present Motion to Stay into a Motion to Dismiss. Defendants are not asking the Court to dismiss all of Plaintiff's claims. Instead, Defendants are simply requesting the Court to stay the case for a few months pending the outcome in the

---

[2] In fact, the Garcetti decision may have a bearing on, at the least, the Whistleblower claim as well, since the same rationale presented in Garcetti may arguably also apply to a Whistleblower claim, i.e., is it not the County Auditor's job to report wrongdoing openly, not secretly, and in a clearly-enumerated fashion, and therefore, is he not outside the categories of persons that the Whistleblower statute was enacted to protect?

4

Garcetti case, so that Plaintiff's free speech claims may be fully and effectively addressed. Not until the Garcetti case has been decided can these claims be properly placed in legal context and resolved. Because Plaintiff's free speech claims may potentially be eliminated by the Garcetti decision, a stay is appropriate and should be granted.

> 2. **The Garcetti Decision, Even if Not Dispositive, Could Potentially Define the Contours of Plaintiff's Free Speech Claims.**

The questions presented in the Garcetti case address speech made as a "citizen," contrasted with speech made pursuant to the job duties of a public employee. It seems highly probable, if not inevitable, that the Supreme Court will examine the contours of speech made as a "citizen." In his response, Plaintiff argues that his speech to the "media, the Attorney General's Office, the General Assembly and the Public" will not be impacted by the Garcetti decision. (D.I. 6 at 13). Without citing any case law in support of his theory, Plaintiff arbitrarily defines this speech as speech made as a "citizen."

Defendants strongly disagree. Plaintiff, at all times, was speaking and acting as the County Auditor. Because of his job responsibilities and the aura of expertise and inside information that his position as Auditor provided, any comments and criticisms Plaintiff made would have had a resounding impact far greater than that of an ordinary citizen. His speech to the "media, the Attorney General's Office, the General Assembly and the Public" could not have been made but for his status as a public official with confidential access to restricted information. Therefore, Defendants contend that, regardless of the audience, Plaintiff was, at all times, engaging in job-related speech in his capacity as County Auditor. See 9 Del. C. § 1404 et seq.

The Third Circuit agrees with this analysis. In Baldassare v. N.J., the Third Circuit unequivocally stated that the analysis must focus on the "value of the speech itself," wherein the inquiry focuses on the "nature of the information, not its audience." 250 F.3d 188,

5

197 (3d Cir. 2001). Therefore, Plaintiff's speech may not be characterized based solely on the listener. Instead, Plaintiff's speech may only be fairly defined by its content. In this case, Plaintiff was speaking on matters strictly related to his job duties as County Auditor and, therefore, his speech was not made as a "citizen," but, instead, as a public employee.

Indeed, if Plaintiff's new spin on his activities were accepted, the role of an internal public sector auditor would be hugely changed and impaired. If the auditor could run to the media or the public, cloaked by First Amendment protection, every time he saw something he thought was "unsound," rather than doing what the statute requires and "lay[ing] such facts before the County Executive and the County Council," 9 Del. C. §1405(b), the result would be the kind of chaos that this Plaintiff created, instead of a mutually respectful and smooth working relationship.[3]

Additionally, this analysis will be subject to clarification and refinement once examined by the Supreme Court in Garcetti. When the Supreme Court visits the citizen-public employee dichotomy, it may change or revise the framework for analyzing this issue. Even more likely, the Supreme Court may refine or clarify the definitions and contours of speech as a public employee versus speech as a citizen. Only after the Supreme Court has had the opportunity to address this dichotomy will this Court be able to properly analyze the issues in the present case with the most current analytical framework available.

3. **Plaintiff's Race Discrimination Claim Is An Afterthought.**

Plaintiff argues that his race discrimination claim will not be disposed of by Garcetti. But that claim is plainly not an important part of Plaintiff's case. Unlike the bombastic detail engaged in by Plaintiff in connection with his First Amendment cause of action, there is

---

[3] It should be noted that the public is provided with additional protection by the statutory requirement of an annual external audit. 9 Del. C. §1409.

DB02:5064019.1    045581.1051

virtually no elaboration or discussion of his race discrimination claim. He merely asserts that he was replaced by a white person. Significantly, Plaintiff did not even file a charge of race discrimination with the Equal Employment Opportunity Commission and the Delaware Department of Labor, and by doing so take advantage of the administrative mechanism available to him for an investigation. There is no claim that any race-related comment was made, nor any other evidentiary reference to race in the Complaint. This claim is an afterthought that should not be weighed heavily in considering a stay.

> **B.    Judicial Economy, Public Welfare, and Minimal Hardship to Plaintiff All Weigh In Favor of Granting a Stay in the Present Case.**
>
>> **1.    Because the Principal Issues in the Case Will Be Narrowed, if Not Eliminated, Judicial Economy Weighs Heavily in Favor of the Stay.**

Judicial economy weighs strongly in favor of granting a stay. See Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd., 7 F. Supp. 2d 523, 28 (D.N.J. 1998) (finding that every court has an interest in efficiently managing its caseload). At the very minimum, one quarter of Plaintiff's complaint may be affected, if not disposed of entirely, by the resolution of the Garcetti case. Potentially, should this Court decide the constitutional issues before a contrary decision from the Supreme Court, an appeal would likely be taken. See Miss. Band of Choctaw Indians v. Miss., C.A. No. J90-0386(B), 1991 U.S. Dist. LEXIS 19397, at *14 (S.D. Miss. April 9, 1991) (finding that the grant of a stay reduces the "likelihood that any unnecessary appeal will be taken"). Because the Supreme Court's decision may invalidate Plaintiff's free speech claims, or, at the least, narrow the issues and analysis, a stay is the proper procedural device.

2. **The Public Interest Requires a Complete and Thorough Analysis.**

Contrary to Plaintiff's position, the public interest will be best served by a stay in this case. Clearly, the public has a substantial interest in having issues of transparency in public office resolved as efficiently and thoroughly as possible. See U.S. v. Smith, 776 F.2d 1104, 1114 (3d Cir. 1985). In order to effectively dispose of this case and, thereby satisfy the public interest, the Court must have the proper tools with which to evaluate Plaintiff's claims. Plaintiff's claims should not be analyzed without further guidance from the Supreme Court. Once the Supreme Court decides the Garcetti case, this Court will have the necessary foundation on which to base future analysis. Not until the Garcetti decision is rendered will the Court be able to provide a complete analysis of the present matter required to satisfy the public interest.

3. **A Stay In the Present Case Would Cause Minimal Hardship to Plaintiff.**

Plaintiff filed his Complaint on June 29, 2005. (D.I. 1). The Supreme Court heard oral argument in the Garcetti case on October 12, 2005. The resolution of the Garcetti case will not cause an undue delay "for many long years," as Plaintiff so overdramatically declares. (D.I. 6 at 17). Instead, Plaintiff will be required only to wait several months until the Supreme Court renders its decision. Certainly, such a minimal delay is not unduly burdensome to Plaintiff. See Michael, 325 F. Supp. 2d at 831 (granting the stay and finding that, even though plaintiffs' case had been pending for "nearly three years," they would suffer minimum hardship).

To further obviate any assertion by Plaintiff of undue delay, Defendants will withdraw their claim that the case should be stayed until the pending criminal cases involving Gordon and Freebery are resolved.

8

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Motion to Stay until such time as the <u>Garcetti</u> case is decided.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Sheldon N. Sandler, Esquire (No. 0245)
Margaret M. DiBianca, Esquire (No. 4539)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  198999-0391
Telephone: (302) 571-6673, 5008
Facsimile: (302) 576-3330; 3476
ssandler@ycst.com
mdibianca@ycst.com
*Attorneys for Defendants*

Dated: October 14, 2005

# CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2005, I electronically filed a true and correct copy of the foregoing **Defendants' Reply Brief in Support of Their Motion to Stay** with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record, and further that I caused a copy of same to be hand delivered to:

>Thomas S. Neuberger, Esquire
>Stephen J. Neuberger, Esquire
>The Neuberger Firm, P.A.
>Two East Seventh Street, Suite 302
>Wilmington, DE 19801

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>_/s/_
>Sheldon N. Sandler, Esquire (No. 0245)
>Margaret M. DiBianca, Esquire (No. 4539)
>The Brandywine Building
>1000 West Street, 17th Floor
>P.O. Box 391
>Wilmington, Delaware  198999-0391
>Telephone: (302) 571-6673, 5008
>Facsimile: (302) 576-3330; 3476
>ssandler@ycst.com, mdibianca@ycst.com
>Attorneys for Defendants