Service: **Get by LEXSEE®**
Citation: **2001 U.S. DIST LEXIS 2047**

*2001 U.S. Dist. LEXIS 2047, \*; 58 U.S.P.Q.2D (BNA) 1317;*
*Copy. L. Rep. (CCH) P28,243*

In re: LITERARY WORKS IN ELECTRONIC DATABASES COPYRIGHT LITIGATION (M.D.L. # 1379); AUTHORS GUILD, INC., et. al. -against- DIALOG CORP., et. al. (00 Civ. 6049); GERALD POSNER, et. al. -against- GALE GROUP, INC., et. al. (00 Civ. 7376); RUTH LANEY, et. al. -against- DOW JONES & CO., INC., et. al. (00 Civ. 9411)

MASTER DOCKET NO. M-21-90 (GBD)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2001 U.S. Dist. LEXIS 2047; 58 U.S.P.Q.2D (BNA) 1317; Copy. L. Rep. (CCH) P28,243

February 27, 2001, Decided
March 1, 2001, Filed

**DISPOSITION:** [\*1] Application for stay of proceedings granted.

### CASE SUMMARY

**PROCEDURAL POSTURE:** In multidistrict litigation composed of three consolidated lawsuits, plaintiffs, classes of freelance authors, alleged that defendants violated the copyrights of plaintiffs by making their works available to the public without their prior consent. Plaintiffs in two of the cases requested a stay of all proceedings.

**OVERVIEW:** Plaintiffs in three separate lawsuits filed similar complaints on behalf of themselves and a class of freelance authors. The cases were consolidated in the present action. Plaintiffs in two of the cases requested that the court stay all proceedings pending a decision by the United States Supreme Court in a pending case. The parties anticipated the decision before the end of the Supreme Court's term in June 2001. The court granted the stay. All parties agreed that the case pending before the Supreme Court was relevant to the present action. The Supreme Court's decision could dispose of the plaintiffs' claims, and would significantly impact the course and scope of the litigation. Proceeding before the Supreme Court's decision would be unnecessarily wasteful of the court's and the litigants' resources. A stay of several months would cause no prejudice or hardship to the objecting plaintiffs.

**OUTCOME:** Application for a stay of proceedings was granted, because review of a pending case by the United States Supreme Court was likely to have a significant, if not dispositive, impact on the instant cases, and judicial economy militated in favor of a stay.

**CORE TERMS:** freelance, multidistrict, publishers, settle, periodical, stay proceedings, civil litigation, regulation, moderation, hardship, publish, judicial economy, expeditiously, electronic, newspaper, magazine

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Trials
HN1 The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants. A court may properly exercise this

power when a higher court is close to settling an important issue of law bearing on the action. Where it is efficient for a trial court's docket and the fairest course for the parties, a stay may be proper even when the issues in the independent proceeding are not necessarily controlling of the action before the court.  More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Trials
HN2 In deciding whether to grant a stay of proceedings, courts generally consider five factors: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.  More Like This Headnote

Civil Procedure > Trials
HN3 The party moving for a stay of proceedings must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. It would be rare for a court to cause a litigant in one case to stand aside while a litigant in another settles the rule of law that defines the rights of both, but such considerations are counsels of moderation rather than limitations upon power. In short, the proponent of a stay bears the burden of establishing its need.  More Like This Headnote

Civil Procedure > Class Actions
HN4 Named plaintiffs may not represent a limited class if they themselves are not members of the class sought to be represented.  More Like This Headnote

**JUDGES:** GEORGE B. DANIELS, United States District Judge.

**OPINIONBY:** GEORGE B. DANIELS

**OPINION: MEMORANDUM OPINION AND ORDER**

GEORGE B. DANIELS, District Judge:

On August 14 and 15, 2000, respectively, Plaintiffs in Posner v. Gale Group, Inc. and Plaintiffs in Authors Guild v. Dialog Corp. filed complaints on behalf of themselves and a class of freelance authors in the United States District Courts for the Northern District of California and the Southern District of New York. In both cases, Plaintiffs allege that defendants -- who collectively own, operate and control large electronic databases that store and provide access to written material collected from newspapers, magazines and other periodical publications -- violated the copyrights of freelance authors by making their works available to the public without their prior consent.

On August 22, 2000, the Plaintiffs in Laney v. Dow Jones & Co., Inc. filed a similar complaint on behalf of themselves and a class of freelance authors in the United States District Court for the District of Delaware. On September 8, 2000, the Laney Plaintiffs filed a motion with the Judicial **[*2]** Panel on Multidistrict Litigation for transfer and coordination or consolidation under 28 U.S.C. § 1407. On September 28, 2000, the Posner Plaintiffs voluntarily dismissed their case in the Northern District of California and refiled it in the Southern District of New York. By order dated December 6, 2000, the panel granted the Laney Plaintiffs' motion, and all three cases were assigned to the United States District Court for the Southern District of New York.

In this multidistrict litigation, all Plaintiffs and Defendants, other than the Laney Plaintiffs,

request that this Court stay all proceedings pending a decision by the United States Supreme Court in New York Times Co. v. Tasini, 531 U.S. 978, 121 S. Ct. 425, 148 L. Ed. 2d 434 (U.S. Sup. Ct. writ of certiorari granted, 2000). In Tasini v. New York Times Co., 206 F.3d 161 (2d Cir. 2000), the Second Circuit Court of Appeals reversed as a matter of law the District Court's dismissal of the plaintiffs freelance authors' copyright infringement claims. The District Court in Tasini had held that, in the absence of any agreement to the contrary, newspaper and magazine publishers had the presumptive [*3] right to publish periodicals electronically as well as in paper version. Tasini v. New York Times Co., 972 F. Supp. 804 (S.D.N.Y. 1997). In its reversal, the Second Circuit Court of Appeals held that, in the absence of an agreement to do so, periodical publishers did not obtain the right to publish on electronic services or CD-ROM.

On a grant of certiorari, the United States Supreme Court has scheduled oral argument in Tasini for March 28, 2001. The parties here anticipate a decision by the United States Supreme Court before the end of the Court's term in June.

All parties agree that Tasini is relevant here. The Posner and Authors Guild Plaintiffs believe that any holding by the Supreme Court in Tasini will significantly impact the course and scope of this multidistrict litigation and that judicial economy militates in favor of a stay. All Defendants argue that if the Supreme Court reverses the decision of the Second Circuit in Tasini, it would dispose of all the named Plaintiffs' claims and, therefore, necessarily, of all the claims of any class members whom those named Plaintiffs would permissibly represent. Defendants further argue that [*4] even an affirmance would certainly powerfully affect future litigation of the claims in these cases in ways impossible to foresee.

The Laney Plaintiffs alone oppose the application for a stay and argue that regardless of the potential outcome in Tasini, expeditiously moving forward best serves the interests of judicial economy. They urge, in particular, that the class certification process should begin, and that this Court should encourage the parties, at a minimum, to agree on a program for appropriate class-related and other discovery pending the Supreme Court's decision. They argue that the Second Circuit's ruling in Tasini only addressed authors and publishers without written agreements. The Laney Plaintiffs primarily premise their opposition to a stay of all proceedings on their position that they seek to represent both authors with written agreements and those without written agreements. Therefore, they argue that because the Supreme Court's decision in Tasini will implicate only authors without written agreements, the claims of authors with written agreements can and should proceed regardless of that decision.

A district court's power to stay proceedings [*5] was settled in Landis v. North American Co., 299 U.S. 248, 254, 81 L. Ed. 153, 57 S. Ct. 163 (1936): *HN1* "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants." A court may properly exercise this power when a higher court is close to settling an important issue of law bearing on the action. See e.g. Marshel v. AFW Fabric Corp., 552 F.2d 471, 472 (2d Cir. 1977) (per curiam) (instructing district court to stay further proceedings pending a Supreme Court decision in a closely related case which was likely to determine the question of liability); Goldstein v. Time Warner New York City Cable Group, 3 F. Supp. 2d 423, 439 (S.D.N.Y. 1998) (staying a case involving a controversial FCC regulation in order to allow the D.C. Court of Appeals to determine the validity of the regulation). Where it is efficient for a trial court's docket and the fairest course for the parties, a stay may be proper even when the issues in the independent proceeding are not necessarily controlling of the action [*6] before the court. Goldstein 3 F. Supp. 2d at 438 (citing Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 864 (9th Cir. 1979), cert. denied, 444 U.S. 827, 62 L. Ed. 2d 34, 100 S. Ct. 51 (1979)).

*HN2* In deciding whether to grant a stay, courts generally consider five factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

Kappel v. Comfort, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (citing Volmar Distributors v. New York Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).

HN3 The party moving for a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." Landis 299 U.S. at 255. The Supreme Court cautioned that it would be rare for a court to cause [*7] a litigant in one case to "stand aside while a litigant in another settles the rule of law that defines the rights of both," but noted that such considerations "are counsels of moderation rather than limitations upon power." Id. In short, "the proponent of a stay bears the burden of establishing its need." Clinton v. Jones, 520 U.S. 681, 708, 137 L. Ed. 2d 945, 117 S. Ct. 1636 (1997).

In this case, all parties, except the Laney Plaintiffs, agree that the above considerations weigh in favor of a stay of all proceedings. The Supreme Court's review of Tasini is likely to have a significant, if not dispositive, impact on the cases here. Proceeding with this litigation several months before the Supreme Court more precisely defines the claims at issue would be unnecessarily wasteful of both the Court's and the litigants' resources. Moreover, a stay of several months will cause no prejudice or hardship to the Laney Plaintiffs.

The Laney Plaintiffs argue that, since they also seek to represent class members who had written agreements, the case should proceed with respect to those claims. However, the named Laney Plaintiffs fail to allege any facts [*8] in their Amended Complaint indicating that they are authors with written agreements. HN4 They will therefore be unable to represent a limited class of other authors with written agreements if they themselves are not members of the class sought to be represented. See e.g. General Tel. Co. v. Falcon, 457 U.S. 147, 156, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982) (holding that Title VII plaintiff who alleged that he was not promoted because of his Mexican-American ethnicity could not represent class of those not hired because they were Mexican-American); Kaczmarek v. Int'l Bus. Mach. Corp., 186 F.R.D. 307, 313 (S.D.N.Y. 1999) (denying class certification where named plaintiffs suing over defective computer part sought to represent a class of purchasers who owned different computer models with different warranties). There is no compelling reason to attempt to parcel out such a limited issue at this time.

It would be an inefficient use of time and resources of the court and the parties to proceed in light of a pending U.S. Supreme Court decision that all agree will significantly impact this multidistrict litigation. All Plaintiffs in two of the three lawsuits, [*9] and all fourteen named Defendants in all cases, agree that a moderate stay of all proceedings is warranted. A decision in the cause before the United States Supreme Court "may not settle every question of fact and law" before this Court, "but in all likelihood it will settle many and simplify them all" Landis, 299 U.S. at 256. Accordingly, this Court finds that a stay within the bounds of moderation, automatically ending upon a decision by the United States Supreme Court in Tasini, is an appropriate exercise of this Court's discretion.

For the foregoing reasons, the application for a stay of proceedings is granted. The case will

be placed on the suspense docket until the Supreme Court issues its decision in Tasini. The parties are directed to contact this Court within 30 days of the date of that decision.

Dated: New York, New York

February 27, 2001

SO ORDERED:

GEORGE B. DANIELS

United States District Judge

Service: Get by LEXSEE®
Citation: 2001 U.S. DIST LEXIS 2047
View: Full
Date/Time: Tuesday, October 4, 2005 - 1:45 PM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any Shepard's signal to Shepardize® that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

FOCUS - 5 Results - "stay of proceedings" w/12 "pending" and "dispositive"                    Page 1 of 4

Source: Legal > Cases - U.S. > Federal Court Cases, Combined
Terms: "stay of proceedings" w/12 "pending" and "dispositive" (Edit Search | Suggest Terms for My Search)
Focus: "stay of proceedings" w/12 "pending" and "dispositive" and "higher court" (Exit FOCUS™)

≡Select for FOCUS™ or Delivery
☐

*2000 U.S. Dist. LEXIS 3999, **

WARREN WEST and ELIZABETH WEST, Plaintiffs, v. UNITED STATES OF AMERICA, Defendant.

CIVIL NO. 99-876 (DSD/JMM)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

2000 U.S. Dist. LEXIS 3999

February 18, 2000, Decided
February 18, 2000, Filed

**DISPOSITION:** [*1] Recommended that Defendant's Motion to Dismiss [Docket No. 13] denied without prejudice.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs sought a refund of federal income tax and interest assessed against them based on the Internal Revenue Service's determination that a partnership was an abusive tax shelter. Defendant moved to dismiss because a related case was **pending** in the appellate court.

**OVERVIEW:** Plaintiffs claimed tax benefits resulting from a limited partnership. The Internal Revenue Service determined that the partnership was an abusive tax shelter and disallowed the claimed benefits. Plaintiffs filed a suit seeking a refund of tax and interest assessed against them. Because a related suit against one of the other limited partners was pending in the appellate court, defendant moved to dismiss. The court denied the motion, although it found that the decision in the related case would be **dispositive** of the principal issues raised by plaintiffs. The court ordered a stay of proceedings until the appellate court in the related case made its decision, as a matter of judicial economy.

**OUTCOME:** The court found that the decision in the related case would be **dispositive** of the principal issues and ordered a stay of proceedings until the decision of the appellate court in the related case.

**CORE TERMS:** undersigned, dispositive, recommended, tax shelter, partnership

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Tax Law > Federal Tax Administration & Procedure > Tax Court (IRC secs. 7441-7491)
Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas
HN1 ♣ A stay is appropriate as a matter of judicial economy where the decision of a **higher court** will be **dispositive** of the principal issues in the matter.  More Like This Headnote

**COUNSEL:** For WARREN S WEST, ELIZABETH A WEST, plaintiffs: Terrance Arthur Costello,

Lindquist & Vennum, Mpls, MN.

For UNITED STATES OF AMERICA, defendant: Charles P Hurley, US Dept of Justice, Washington, DC.

**JUDGES:** JOHN M. MASON, United States Magistrate Judge.

**OPINIONBY:** JOHN M. MASON

**OPINION:** REPORT AND RECOMMENDATIONU

The above matter came on for hearing before the undersigned on February 9, 2000 upon Defendant's Motion to Dismiss [Docket No. 13]. The matter is before the undersigned for a Report and Recommendation to District Court Judge David S. Doty, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B). Terrance A. Costello, Esq. appeared on behalf of Plaintiffs, and Charles P. Hurley, Esq. appeared on behalf of Defendant. Upon the following Findings of Fact/Report, it is recommended as follows:

1. Defendant's Motion to Dismiss [Docket No. 13] should be denied without prejudice; and

2. This matter should be stayed until the decision of the Court of Appeals for the Eleventh Circuit in the matter of Davenport Recycling Associates v. Commissioner of Internal Revenue, T.C. Memo 1998-347, 76 T.C.M. (CCH) 562 (1998). [*2]

**FINDINGS OF FACT/REPORT**

In 1982, Plaintiff Warren S. West purchased an interest in a limited partnership known as Masters Recycling Associates ("Masters") for $ 25,000. Masters was one of at least seven partnerships formed as part of a tax shelter promotion involving plastics recycling equipment. The IRS determined that each of the seven, including Masters, were part of an abusive tax shelter and disallowed the tax benefits provided.

All seven partnerships filed petitions with the Tax Court challenging the IRS determination. See Davenport Recycling Associates v. Commissioner, 1998 Tax Ct. Memo LEXIS 349, 76 T.C.M. (CCH) 562, 1998 T.C. Memo 347 (1998). The Tax Court selected one of the cases as a lead case, and ruled in favor of the IRS. See Harold M. Provizer, T.C. Memo 1992-177, 63 T.C.M. (CCH) 2531 (1992). This decision was affirmed by the Sixth Circuit in Provizer v. Commissioner, 996 F.2d 1216 (1993), cert. denied 510 U.S. 1163, 114 S. Ct. 1187, 127 L. Ed. 2d 538 (1994).

In the present suit, Plaintiffs seek a refund of federal income tax and interest assessed against them based on the IRS's denial of certain [*3] tax credits the Plaintiffs claimed that arose from the readjustment of items from Masters Recycling Associates, Sam Winer, Tax Matters Partner v. Commissioner, U.S. Tax Court Docket No. 18417-89, the prior suit determined by Provizer v. Commissioner.

Defendant filed the current Motion to Dismiss [Docket No. 13] on January 10, 2000, based on lack of jurisdiction. Defendant argues that the current allegations are the same as those in Davenport, and thus the District Court does not have jurisdiction as this is a collateral matter.

At the hearing on February 9, 2000, Plaintiffs argued that the proper action for the Court to take would be to stay the proceeding until the Eleventh Circuit rules on Davenport, as that ruling will be **dispositive** on the entire case, with the possible exception of Plaintiffs' claim for a refund of the tax motivated interest assessed against them pursuant to 26 U.S.C. § 6621(c).

Defendant has presented strong and substantial legal and factual support for its Motion to Dismiss. We conclude, however, that HN1 a stay is appropriate as a matter of judicial economy. The decision of the Court of Appeals for the Eleventh Circuit [*4] will be **dispositive** of the principal issues in this matter. Briefs have already been filed in the Court of Appeals, and oral argument will be held soon, so a lengthy stay will not be required. Defendant will not be prejudiced by the Stay. By granting the brief Stay contemplated, time-intensive presentations by the parties and consideration by the District Court may be avoided.

**RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1. Defendant's Motion to Dismiss [Docket No. 13] be denied without prejudice; and

2. This matter be stayed until the decision of the Court of Appeals for the Eleventh Circuit in the matter of Davenport Recycling Associates v. Commissioner of Internal Revenue, T.C. Memo 1998-347, 76 T.C.M. (CCH) 562 (1998).

Dated: February 18, 2000

JOHN M. MASON

United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **March 8, 2000** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. [*5]

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **March 8, 2000**.

Source: Legal > Cases - U.S. > Federal Court Cases, Combined
Terms: "stay of proceedings" w/12 "pending" and "dispositive" (Edit Search | Suggest Terms for My Search)
Focus: "stay of proceedings" w/12 "pending" and "dispositive" and "higher court" (Exit FOCUS™)
View: Full
Date/Time: Tuesday, October 4, 2005 - 1:50 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
[A] - Citing Refs. With Analysis Available
[I] - Citation information available
* Click on any Shepard's signal to Shepardize® that case.

About LexisNexis | Terms and Conditions

Get a Document - by Citation - 1991 U.S. Dist. LEXIS 19397    Page 1 of 8

Case 1:05-cv-00445-GMS   Document 72   Filed 10/14/2005   Page 9 of 15

Service: **Get by LEXSEE®**
Citation: **1991 US Dist. LEXIS 19397**

*1991 U.S. Dist. LEXIS 19397, **

MISSISSIPPI BAND OF CHOCTAW INDIANS VS. STATE OF MISSISSIPPI and RAY MABUS, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF MISSISSIPPI DEFENDANTS

CIVIL ACTION NO. J90-0386(B)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI, JACKSON DIVISION

1991 U.S. Dist. LEXIS 19397

April 9, 1991, Decided
April 9, 1991, Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff tribe moved for partial summary judgment and defendant state of Mississippi moved to dismiss, for summary judgment, and/or to stay proceedings in the tribe's action against the state seeking the court to direct the state to conclude a tribal-state compact regarding casino gaming activities within a 60 day period as provided in the Indian Gaming Regulatory Act (IGRA).

**OVERVIEW:** The tribe asserted that the state failed to negotiate in good faith to conclude a tribal-state compact regarding casino gaming activities on tribal lands within the state and brought a lawsuit against the state pursuant to remedial provisions of IGRA. The tribe filed a motion for partial summary judgment and the state filed a motion to stay proceedings pending the decision of the United States Supreme Court in a similar case where the Eleventh Amendment issue would have been decided. The court found that because the state's sovereign immunity defense presented a substantial issue of law concerning a jurisdictional issue that could have been appealed as of right, and because that issue was going to be settled by the opinion in the other case, the interests of judicial economy and justice were best served by staying all proceedings until such time as further guidance was forthcoming from the Supreme Court. The court stated that by staying the action, it would be able to make its initial determination in light of the Supreme Court decision, thus decreasing the likelihood that any unnecessary appeal will be taken. The court granted the state's motion to stay.

**OUTCOME:** The court granted the state's motion to stay proceedings pending a ruling by the United States Supreme Court, and denied the tribe's motion for sanctions.

**CORE TERMS:** tribe, gaming, compact, sovereign immunity, tribal-state, casino, governor, abrogation, tribal, lawsuit, commerce clause, vessels, immunity, subject matter jurisdiction, legislative session, joinder, negotiating, consented, team, interposed, frivolous, interstate commerce clause, jurisdictional issue, implied consent, state immunity, state law, negotiation, forthcoming, anti-gaming, regulation

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Governments > Native Americans > Indian Gaming Regulatory Act
HN1 ↓ The Indian Gaming Regulatory Act provides that Indian tribes are authorized to

Get a Document - by Citation - 1991 U.S. Dist. LEXIS 19397

Case 1:05-cv-00445-GMS   Document 72   Filed 10/14/2005   Page 10 of 15

Page 2 of 8

conduct casino gaming operations on tribal lands within a state if that state permits casino gaming within its borders for other charitable, commercial, or governmental purposes. Before such gaming operations can be instituted on tribal lands, however, it must be authorized by a tribal-state compact that has been approved by the Secretary of the Interior. 25 U.S.C.S. § 2710(d)(1).  More Like This Headnote

Civil Procedure > Pleading & Practice > Motion Practice Generally > Content & Format of Motions

HN2 According to U.S. D.Ct., N.D. and S.D. Miss., R. 8(d), all motions must be accompanied by a memorandum of authorities which the movant relies on in support of the motion.  More Like This Headnote

Civil Procedure > Pleading & Practice > Service of Process

HN3 Fed. R. Civ. P. 12(a) requires that a defendant shall serve an answer within 20 days after the service of the summons and complaint upon the defendant.  More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss

HN4 Fed. R. Civ. P. 12(b) provides that certain defenses may be asserted by motion prior to the time at which the answer is served. Included among the defenses that may be asserted in this manner is the defense of lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  More Like This Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction

HN5 Where the subject matter jurisdiction of the court has been questioned, timeliness is not an issue, and the court may, sua sponte, raise the jurisdictional issue at any point in the proceeding.  More Like This Headnote

**JUDGES:** [*1] Barbour

**OPINIONBY:** WILLIAM H. BARBOUR

**OPINION:** MEMORANDUM OPINION AND ORDER

This cause is before the Court, pursuant to Rules 11, 12(b)(1), and 56 of the Federal Rules of Civil Procedure, on the Motion of Plaintiff, the Mississippi Band of Choctaw Indians, for Partial Summary Judgment. In response, Defendant, the State of Mississippi, filed a Motion to Dismiss, for Summary Judgment, and/or to Stay Proceedings. Defendant Mabus has joined the Motion to Dismiss, for Summary Judgment, and/or to Stay Proceedings. In response to Defendants' Motion, Plaintiffs' have filed a Motion to Strike Joinder and a Motion for Sanctions. The Court, upon consideration of the foregoing Motions, together with memoranda of authorities and attachments thereto, now renders the following findings of fact and conclusions of law.

I. FACTS AND PROCEDURAL HISTORY

In 1988, the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2710, was signed into law. HN1 IGRA provides that Indian tribes are authorized to conduct casino gaming operations on tribal lands within a state if that state permits casino gaming within its borders for other charitable, commercial, or governmental purposes. Before such gaming operations can be instituted on [*2] tribal lands, however, it must be authorized by a tribal-state compact that has been approved by the Secretary of the Interior. 25 U.S.C. § 2710(d)(1).

When IGRA was initially passed in 1988, casino gaming was not permitted in Mississippi "for any purpose by any person, organization, or entity" within the meaning of IGRA. Indeed,

casino gaming was a criminal offense under Mississippi anti-gaming statutes. See Miss. Code Ann. § 97-33-1 et seq. (Supp. 1988). These anti-gaming statutes were amended during the 1989 general legislative session when the Mississippi Legislature enacted Mississippi Laws, 1989, Chapter No. 480, Senate Bill No. 3068 (codified as Miss. Code Ann. § § 27-109-1 through -13, and amending Miss. Code Ann. § § 67-1-71 and 95-3-25) and Chapter No. 481, Senate Bill No. 3069 (amending Miss. Code Ann. § § 87-1-5, 97-33-1, 97-33-17, 97-33-25, and 97-33-27). These two legislative enactments provided for the legality and regulation of certain betting, gaming, or wagering activities on cruise vessels operating in the Mississippi coastal channel, a part of the territorial jurisdiction of the State of Mississippi.

When the Mississippi Band of Choctaws ("the Tribe") became [*3] aware of the changes in state law authorizing casino gaming in Mississippi territorial waters, the Tribe decided to exercise its rights to conduct gaming operations on tribal lands as contemplated and authorized by IGRA. To that end, Chief Phillip Martin of the Tribe and a tribal staff member met with Ray Mabus, governor of the State of Mississippi, and members of his staff on December 1, 1989, at which time the Tribe requested the State of Mississippi to negotiate a tribal-state compact in accordance with the provisions of IGRA. At this meeting, Governor Mabus appointed J. Mac Holladay, Jay Moon, and Peyton Prospere to serve as the negotiating team for the State of Mississippi. The Governor agreed with Chief Martin that the 180 day limit for negotiation of the compact, as provided in 25 U.S.C. § 2710(d)(7)(B)(i), commenced on the date of that meeting.

Representatives of the Tribe and the state negotiating team had several meetings concerning the tribal-state compact during the months succeeding the initial December 1, 1989, meeting. At an April 12, 1990, meeting between representatives of the Tribe and the state negotiating team, Governor Mabus informed Chief Martin that he would [*4] not enter into a tribal-state compact on behalf of the State of Mississippi.

Subsequent to that meeting, the Tribe, through its attorneys and other representatives, met with Peyton Prospere to discuss the tribal-state compact. A proposed compact was presented by the Tribe to Prospere. The Tribe never received any response from the State of Mississippi to the proposed compact.

During the regular 1990 general legislative session, additional legislation was passed which expanded the permitted range of gaming activities under state law and expanded the authority of the state to regulate such activity. These changes extended betting, gaming, or wagering activities to vessels operating in navigable waterways bordering on the Mississippi River and also eliminated some geographic restrictions that had previously been placed on gaming vessels in the coastal channel. See Miss. Laws, 1990, Chapter no. 449, Senate Bill No. 2837 (amending Miss. Code Ann. § § 27-109-1, 67-1-71, 87-1-5, 95-3-25, 97-33-1, 97-13-17, 97-33-25, and 97-33-27), and Chapter No. 573, Senate Bill No. 2744 (amending Miss. Code Ann. § § 21-19-33, 27-109-1, 27-109-3, 27-109-7, 27-109-9, 67-1-71, 87-1-5, 95-3-25, 97-33-1, [*5] 97-33-7, 97-33-9, 97-33-17, 97-33-25, and 97-33-27). During the 1990 special legislative session that followed, the Mississippi Legislature passed the "Mississippi Gaming Control Act," which provides a comprehensive statutory framework for regulation, licensing, and taxation of legal gaming activity within Mississippi. Specifically, the Act provided for a gaming commission to become operative in the year 1993, with the State Tax Commission to fulfill that role in the interim period. These agencies are vested with the authority to regulate, license, and tax legalized gambling and to license and regulate cruise and other vessels upon which legalized gambling is conducted.

On June 1, 1990, the 180 day period set under IGRA for negotiation of the tribal-state compact lapsed without any agreement having been reached between the Tribe and the State of Mississippi.

On August 3, 1990, the Tribe filed the instant lawsuit against the State of Mississippi

Get a Document - by Citation - 1991 U.S. Dist. LEXIS 19397

Case 1:05-cv-00445-GMS   Document 7-2   Filed 10/14/2005   Page 12 of 15

Page 4 of 8

pursuant to remedial provisions of IGRA. In Count I of the complaint, the Tribe seeks an adjudication by this Court that, in clear violation of IGRA, the State of Mississippi failed to negotiate in good faith with the Tribe to conclude a tribal-state **[*6]** compact regarding casino gaming activities on tribal lands located within the State of Mississippi. The Tribe seeks an order of this Court directing the State of Mississippi to conclude a tribal-state compact within a sixty day period as provided in IGRA. In Count II of the complaint, the Tribe seeks a declaratory judgment that casino gaming activities are legal in the State of Mississippi by virtue of the Mississippi Gaming Control Act and the amendments to Miss. Code Ann. § § 21-19-33, 95-3-25, and 97-33-9, and that these laws permitting gaming activity are not in violation of Section 98 of the Mississippi Constitution, which prohibits lotteries in the State of Mississippi.

On October 15, 1990, Plaintiff filed a Motion for Partial Summary Judgment as to Count I of the complaint. In response to Plaintiff's Motion, Defendant, the State of Mississippi, filed a Motion to Dismiss, for Summary Judgment, and/or to Stay Proceedings. Defendant's Motion is primarily premised on the eleventh amendment to the United States Constitution and principles of sovereign immunity.

Partially in response to the eleventh amendment issues raised in Defendant's Motion, Plaintiff thereafter amended the complaint **[*7]** to add Ray Mabus, in his official capacity as Governor of the State of Mississippi, as a Defendant in the lawsuit. Defendant Mabus then noticed this Court of his joinder in the Motion of the State of Mississippi to Dismiss, for Summary Judgment, and/or to Stay Proceeding. Plaintiff filed a Motion to Strike Joinder of Defendant Mabus in the Motion filed by the State of Mississippi. Plaintiff also filed a Motion for Sanctions, asserting that the eleventh amendment issue raised in Defendants' Motion was both frivolous and interposed for an improper purpose.

II. ANALYSIS

Because the procedural and jurisdictional issues that have been raised in the various Motions must be considered before the merits of the case can be addressed, Plaintiff's Motion to Strike Joinder and Defendants' Motion to Dismiss, for Summary Judgment, and/or to Stay Proceedings will be considered first.

A. Motion to Strike Joinder

In response to the eleventh amendment sovereign immunity issue that was raised by the State of Mississippi in its Motion to Dismiss, for Summary Judgment, and/or to Stay Proceedings, Plaintiff amended the complaint to name Ray Mabus, in his official capacity as governor of the State of Mississippi, **[*8]** as a Defendant. Upon being named a Defendant, Mabus noticed this Court of his joinder in the Motion of the State of Mississippi to Dismiss, for Summary Judgment, and/or to Stay Proceedings. The Notice of Joinder asserted that, in addition to the bars to this suit noted in the State's Motion, Defendant Mabus was also entitled to assert real party in interest and absolute legislative immunity as bars to the suit as well.

Plaintiff thereafter filed a Motion to Strike Joinder of Defendant Mabus in the Motion that has been filed by the State of Mississippi. Plaintiff contends that Defendant Mabus' Notice of Joinder, which raises issues not before the Court on the State of Mississippi's Motion, is an attempt to place before the Court a separate motion to dismiss for failure to state a claim. *HN2* According to Rule 8(d) of the Uniform Local Rules of the United States District Courts for the Northern and Southern Districts of Mississippi, all motions must be accompanied by a memorandum of authorities which the movant relies on in support of the motion. Because Defendant Mabus has failed to submit a memorandum of authorities in support of the dispositive issues raised in the Notice of Joinder and **[*9]** is, therefore, not in compliance with Rule 8(d), Plaintiff asks this Court to Strike or otherwise deny any relief sought by

Get a Document - by Citation - 1991 U.S. Dist. LEXIS 19397

Case 1:05-cv-00445-GMS   Document 71-2   Filed 10/14/2005   Page 13 of 15

Page 5 of 8

Defendant Mabus through the Notice of Joinder.

In addition, Plaintiff asserts that Defendant Mabus is not in compliance with HN3 Rule 12(a) of the Federal Rules of Civil Procedure, which requires that a "defendant shall serve an answer within twenty days after the service of the summons and complaint upon the defendant." Mabus was made a defendant to this action on December 18, 1990, and was served with process through his counsel on December 20, 1990. Accordingly, Defendant Mabus' answer to the complaint was due on January 9, 1991. However, counsel for Mabus did not file any sort of response to the complaint until the Notice of Joinder was filed on January 11, 1991. Because the filing of the Notice of Joinder was untimely, Plaintiff asks this Court to strike or otherwise deny any relief sought by Mabus through the Notice of Joinder.

This Court finds that Defendant Mabus may join in the Motion to Dismiss, for Summary Judgment, and/or to Stay Proceedings that was filed by the State of Mississippi. While it is true that Defendant Mabus has failed to answer the complaint [*10] that has been filed against him within the time period set under the Federal Rules of Civil Procedure, HN4 Rule 12(b) provides that certain defenses may be asserted by motion prior to the time at which the answer is served. Included among the defenses that may be asserted in this manner is the defense of lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Because Defendants' eleventh amendment assertions are a challenge to the subject matter jurisdiction of this Court, see Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 121 (1984), the Court concludes that these issues have been properly placed before it on a Rule 12(b)(1) Motion to Dismiss. Additionally, the Court notes that, HN5 where the subject matter jurisdiction of the Court has been questioned, timeliness is not an issue, and the Court may, sua sponte, raise the jurisdictional issue at any point in the proceeding. Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 278 (1977).

The Court does find, however, that Defendant Mabus may not use the Notice of Joinder to add any new issues to the Motion to Dismiss that was filed by the State of Mississippi. [*11] As previously noted, the Notice of Joinder asserted real party in interest and legislative immunity as two new defenses to Plaintiff's lawsuit. This Court finds that the assertion of new defenses in the Notice of Joinder is, in effect, an attempt to place a new motion to dismiss before the Court and, therefore, such attempts must comply with all local rules relating to motion practice before this Court. Because Defendant Mabus has failed to comply with Local Rule 8(d), the Court concludes that any new matters raised in the Notice of joinder are not properly before the Court and, therefore, cannot be considered as part of the Motion to Dismiss, for Summary Judgment, and/or to Stay Proceedings.

B. Motion to Dismiss, for Summary Judgment, and/or to Stay Proceedings

In response to the Motion for Partial Summary Judgment that was filed by Plaintiff, Defendants filed a Motion to Dismiss, for Summary Judgment, and/or to Stay Proceedings. In their Motion, Defendants raise the eleventh amendment and principles of sovereign immunity as bars to the instant suit. In the alternative, Defendants ask this Court to stay disposition of the currently pending Motions until the United States Supreme [*12] Court has decided the controlling issue of law in a case that is presently pending before that Court. Finally, Defendants assert that, under controlling precedent in the United States Court of Appeals for the Fifth Circuit, they are relieved of the duty to respond to the proceedings on the merits until such time as the threshold issue of sovereign immunity has been determined.

Upon a review of the record in this case and the memoranda of authorities submitted in connection with the instant Motions, the Court concludes that all proceedings in this action should be stayed, pending the decision of the United States Supreme Court in the case of Hoffman v. Native Village of Noatak, 896 F.2d 1157 (9th Cir. 1990), petition for cert. granted 111 S. Ct. 37 (1990).

Get a Document - by Citation - 1991 U.S. Dist. LEXIS 19397    Page 6 of 8

Case 1:05-cv-00445-GMS    Document 7-2    Filed 10/14/2005    Page 14 of 15

As Defendants have noted to this Court, the United States Supreme Court in United States v. Minnesota, 270 U.S. 181, 191-95 (1926), held that the eleventh amendment barred a suit by an Indian tribe against a state. However, in Native Village of Noatak v. Hoffman, supra, the United States Court of Appeals for the Ninth Circuit summarily dismissed the Minnesota ruling [*13] as "dictum" and held that the eleventh amendment did not bar a suit by an Indian tribe against a state because the states had consented to suits by Indian tribes when they consented to be bound by the Indian Commerce Clause of the United States Constitution. Noatak, 896 F.2d at 1164-65. On October 1, 1990, the United States Supreme Court granted the State of Alaska's petition for writ of certiorari to review the Ninth Circuit decision. Hoffman v. Native Village of Noatak, 111 S. Ct. 37 (1990). The first question presented in the petition for certiorari is:

Did the States give up their immunity under the Eleventh Amendment when sued by an Indian tribe in federal court by consenting to be bound by the commerce clause upon entry into the Union.

Defendants urge, and this Court agrees, that the eleventh amendment issue poised for consideration under Noatak is the same issue that currently faces this Court. Because Defendants' sovereign immunity defense presents a substantial issue of law concerning a jurisdictional issue that, as a threshold matter, can be appealed as of right from any order entered by this Court, see Loya v. Texas Department of Corrections, 878 F.2d 860 (5th Cir. 1989); [*14] Mitchell v. Forsyth, 472 U.S. 511 (1985), and because that issue will in fact be settled by the forthcoming opinion in Noatak, the Court concludes that the interests of judicial economy and justice would be best served by staying all proceedings in this action until such time as further guidance is forthcoming from the United States Supreme Court. If this Court were to enter an opinion on the eleventh amendment issue at this time, it would certainly be appealed by the non-prevailing party. This Court's order would then be reviewed by the United States Court of Appeals for the Fifth Circuit, which would have the benefit of the Noatak ruling at the time that it considered these issues. By staying the action at this time, the Court will be able to make its initial determination in light of Noatak, thus decreasing the likelihood that any unnecessary appeal will be taken in this matter.

Plaintiff strongly urges this Court to deny Defendants' Motion for a Stay of Proceedings pending the decision in Noatak on the basis that Noatak is not controlling on the eleventh amendment issue presented in the instant matter. According to Plaintiff, Noatak [*15] deals solely with the issue of waiver of sovereign immunity through the state's consent to suit. Conversely, Plaintiff maintains, the instant suit concerns the abrogation of sovereign immunity through congressional action. Since the issue of state consent is not relevant in the context of a congressional abrogation of immunity, Plaintiff concludes that Noatak is not controlling and no stay should be issued based on the pendency of that suit.

Upon an examination of the authority cited by Plaintiff, the Court concludes that, contrary to Plaintiff's assertions, the issue of state consent as presented in Noatak is directly relevant to the issue of whether Congress may abrogate a state's eleventh amendment immunity while legislating pursuant to a constitutional grant of authority: Plaintiff has cited Pennsylvania v. Union Gas Co., 491 U.S. 1, 109 S. Ct. 2273 (1989) as support for its proposition that congressional abrogation of sovereign immunity does not involve the issue of a state's consent to suit. In Union Gas, the United States Supreme Court held that a state's eleventh amendment immunity from suit could be abrogated by congressional action [*16] where congressional intent to abrogate state immunity was clear and where the abrogation occurred through the exercise of Congress' constitutionally vested authority to regulate interstate commerce which the states had impliedly consented to "in the plan of the [constitutional] convention." Union Gas, 109 S. Ct. at 2276 (citing Monaco v. Mississippi, 292 U.S. 313, 322-23 (1934)). It is this "implied consent" theory of congressional abrogation that marks the radical significance of the Union Gas opinion and which the Noatak court used to find an

implied consent to suit by the states under the Indian commerce clause. This Court can simply find no basis of support in Union Gas for Plaintiff's contention that the issue of state consent has no bearing in the instant matter.

Furthermore, the Court notes that it does not consider the Union Gas decision itself controlling precedent upon which the eleventh amendment questions at issue here could be decided. Union Gas dealt with congressional abrogation of state immunity through an exercise of authority under the interstate commerce clause. The instant matter involves the [*17] Indian commerce clause. As the Court in Cotton Petroleum Corp. v. New Mexico, 490 U.S. 163, 104 L. Ed. 2d 209, 236-37 (1989) noted, the interstate commerce clause and the Indian commerce clause have radically different legislative effects and are premised upon divergent understandings of the role of the state in our system of federal government. Accordingly, the Court concludes that Union Gas does not provide controlling authority upon which the eleventh amendment issues in this lawsuit may be decided.

Based on the foregoing analysis, the Court concludes that Defendants' Motion to Stay Proceedings is well taken and should be granted. Accordingly, all proceedings in this lawsuit are hereby stayed pending a ruling by the United States Supreme Court in the case of Hoffman v. Native Village of Noatak.

C. Motion for Sanctions

In response to the eleventh amendment issues Defendants raised in the Motion to Dismiss, for Summary Judgment, and/or to Stay Proceedings, Plaintiff filed a Motion for Sanctions, asserting that Defendants' sovereign immunity defense was both frivolous and interposed for an improper purpose. On the basis of its analysis of the [*18] sovereign immunity issues presented by this case, however, the Court finds that Defendants' eleventh amendment defenses are neither frivolous not interposed for improper purposes. Accordingly, the Court concludes that Plaintiff's Motion for Sanctions is without merit and should therefore be denied.

IT IS THEREFORE ORDERED that Defendants' Motion to Stay Proceedings is hereby granted and that all further proceedings in this matter are hereby stayed pending a ruling by the United States Supreme Court in the case of Hoffman v. Native Village of Noatak, 896 F.2d 1157 (9th Cir. 1990), petition for cert. granted 111 S. Ct. 37 (1990).

IT IS FURTHER ORDERED that Plaintiff's Motion for Sanctions is hereby denied.

SO ORDERED this the 9th day of April, 1991.

William H. Barbour
CHIEF JUDGE

Service: **Get by LEXSEE®**
Citation: **1991 US Dist. LEXIS 19397**
View: Full
Date/Time: Friday, October 14, 2005 - 11:53 AM EDT

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.